HENRY W. STILLMAN AND OTHERS vs. ISAAC HARVEY AND ANOTHER.

*A and B formed a copartnership, without limit as to time, for carrying on the business of brewing. Having no brewery, A, without the knowledge of B, negotiated for the purchase of an unexpired lease of one, which lease had seven years to run, signing the partnership name to an agreement on the back of the lease to assume the lease and pay the rent. The firm took possession of the brewery and occupied it in the prosecution of their business, (A paying the rent in the firm name and on its account,) for seven months, when the partnership was dissolved, and the machinery sold to D, who took possession of the brewery and paid the rent to the lessors for four months, taking receipts in the name of A & B. He then re-sold the machinery to A & B and delivered up the premises to them. A month later they sold the machinery to H, and gave him a lease of the brewery for one year, both A and B signing the lease. H occupied but a short time and paid no rent, and the lessors had no knowledge of the lease to him. In a suit brought by the lessors against A and B for rent accruing during and after the occupancy of H, it was held—*

*1. That the purchase of the lease of the brewery by A for the partnership, and in its name, being directly in the line of the partnership business and necessary to its prosecution, was within his power as a partner and binding on the partnership.*

*2. That if it were not so, yet the partnership by its acts, including the signing of the lease to H by both partners, had ratified the acts of A in the matter.*

*The original lease was under seal, but the assent of the lessors to the transfer of the lease to A & B, the transfer itself, and the agreement of A & B to assume the lease and pay the rent, were not under seal. Held not to affect the case between the parties.*

*The original lessee had gone into bankruptcy and the transfer was made by his assignee. It was claimed by the defendants that this transfer was invalid. Held that they could not protect themselves by its invalidity from their liability for the rent, having agreed with the lessors to assume the lease and pay the rent, and having gone into occupancy under the agreement.*

ASSUMPSIT for the rent of a brewery; brought to the Court of Common Pleas of Fairfield County. The following facts were found by the court:—

In June, 1873, the plaintiffs were the owners of the property described in the declaration, and on the 2d day of June, 1873, leased the same to George B. Montague, by a lease under seal, for the term of ten years from the 1st day of June, 1873, which lease was not transferable without the consent of the lessors. On the 25th of May, 1875, Montague was adjudicated a bankrupt under the laws of the United

States upon his own petition. Neither the lease in question nor the land therein described was embraced in the schedule of assets filed by him, and the same were not inventoried by James Staples, his assignee in bankruptcy, who was elected on the 5th day of June, 1875, and received a deed of the property of the bankrupt from the register in bankruptcy, and he never entered into possession of the premises as the assignee of Montague.

The defendants, on the 3d day of January, 1876, entered into a copartnership under the name of Harvey & Haviland, for the purpose of brewing and selling ale at Bridgeport, but no agreement was made between them to lease any property for that business. Neither of the defendants owned or possessed a brewery.

On the 22d day of January, 1876, J. & G. A. Staples, a partnership composed of the assignee and his brother G. A. Staples, and who were the agents of the plaintiffs, endorsed on the back of the lease a permission to transfer the same, which permission was not under seal; and on the same day Staples, as assignee, upon the application of Harvey, sold and assigned the lease to the defendants, entering the transfer upon the back of it, of which Haviland had no knowledge, and he had not authorized Harvey to purchase the lease or accept the assignment of it. The lease was sold at private sale, and the assignee had no authority from the United States court to sell any part of the estate of the bankrupt at private sale; and he made no return of the sale to the court in his final account as assignee.

On the same day Harvey signed the name of the copartnership to an agreement assuming the lease and agreeing to pay the rent reserved by it, and to comply with its conditions, which agreement was endorsed upon the back of the lease. This agreement was not under seal or acknowledged before any officer, and the signature was attached to the agreement by Harvey without the knowledge or consent of Haviland. Afterwards the firm of Harvey & Haviland went into possession of the real estate, and continued in possession until about the 1st day of September, 1876, during which period Harvey paid the rent for the premises, in accordance with said lease.

About the 1st day of September, 1876, Harvey & Haviland dissolved their copartnership, and sold all the machinery and fixtures to William Dougherty, who entered into possession of the property, and .continued in possession until January 5th, 1877, during which time he paid the rent for the premises to the plaintiffs, and at the suggestion of Harvey took receipts for the same in the name of Harvey & Haviland. On January 5th Dougherty re-conveyed all his interest in the machinery and fixtures in the mill upon the premises to Harvey & Haviland, who retained the same in the mill until about the 3d day of February, 1877, when Harvey sold them to Samuel Horn & Sons, and at the same time executed and delivered to them a lease in writing of the premises, signed by both the defendants, which lease was for the term of one year from the 27th day of January, 1877, and under this lease Horn & Sons went into possession of the property. The plaintiffs had no knowledge of this transaction upon the part of the defendants, and received no rent from Horn & Sons. Horn & Sons became bankrupt June 1st, 1877, and neither they nor Haviland have been in actual possession of the premises since that time.

Haviland had no actual possession of the property after September 1st, 1876, and no constructive possession prior to that date, unless the occupation of the premises in the copartnership business of Harvey & Haviland was a constructive possession under the facts above found. And he never ratified the assumption of the Montague lease, signed in the copartnership name by Harvey, unless the execution of the lease to Horn & Sons, and the other facts found, were such a ratification.

The fair price for the use and occupation of the premises during the period covered by the plaintiffs' bill of particulars is $15 per month.

If upon the foregoing facts the defendant Haviland should be held liable under the Montague lease, then the court found that the plaintiffs were entitled to recover the sum of $141.67, with interest from October 1st, 1877; but if held not liable under the lease, but liable for the use and occupation of the

premises, then that the plaintiffs were entitled to recover $75.00, with like interest; and that if not liable in either respect he was entitled to judgment for his costs.

Upon these facts the case was reserved for the advice of this court.

*R. E. DeForest*, for the plaintiffs.

*First.* The defendant Haviland is liable under the covenant of the lease.

1. The act of Harvey in expressly assuming the lease in the name of the firm was binding upon both partners.—(*a*) Harvey had original authority as a member of the firm so to bind the partnership. The finding that there was no agreement between the partners to lease any property, evidently refers to an *express* agreement. But as the business of the firm was to be brewing and selling ale, it was necessarily within the scope of the partnership business to provide the necessary premises and apparatus for that purpose, and by implication, if not expressly, either partner had authority to do this.—(*b*) By subsequent ratification. It is found that after the lease had been so assumed, the *firm*, which of course included the defendant Haviland, went into possession of the leased premises, and continued in such possession until September 1st, 1876, and that the rent was paid according to the lease; that on the 1st day of September they sold the machinery and fixtures to Dougherty, and from that time until January 5th, 1877, allowed him to remain in occupation, paying rent and taking receipts in their name; that then they repurchased from Dougherty the machinery and fixtures in the mill, and retained the same until the 3d of February following, when both partners, under their hands and seals, sub-let the property for one year from January 27th, 1877, to Horn & Sons. The amount of rental agreed upon in this sub-lease evidently has reference to the rate fixed in the original lease. Upon this state of facts it will hardly be denied that Haviland knew that the lease had been assumed by his partner in the name of the firm, and that he fully indorsed and ratified the transaction. *Blood* v. *Goodrich*, 9 Wend., 68.

2.   The act of Staples, assignee, as stated in the finding, constituted a valid assignment of the lease, certainly as against the defendants.—(*a*) The title to the lease passed by the assignment in bankruptcy if the assignee saw fit to accept such title.—(*b*) By the act of sale the assignee did so accept the lease, and thereby became possessed of it.   *White* v. *Griffing*, 44 Conn., 449; *Turner* v. *Richardson*, 7 East, 335; *Hastings* v. *Wilson*, 1 Holt N. P. C., 290; *Welch* v. *Myers*, 4 Camp., 368.—(*c*) The written assignment by Staples was legally sufficient.   It was not necessary that it should . be under seal or acknowledged.   Taylor's Landlord & Tenant, § 427; *Hess* v. *Fox*, 10 Wend., 436; *Holliday* v. *Marshall*, 7 Johns., 211; *Glover* v. *Wilson*, 2 Barb., 264; *Holsman* v. *De Gray*, 6 Abbott Pr. R., 79; *Beck* v. *Phillips*, 5 Burr., 2827; *Botting* v. *Martin*, 1 Camp., 318.—(*d*) The sale, though not by special order of court and though not at auction, was nev- ertheless valid.   *In re White*, 1 Nat Bank. Reg. R., 218.   The bankrupt act itself does not limit the assignee to any particu- lar mode of sale.   If he disregarded a rule of the court and thus proceeded informally, he may have subjected himself to some liability, but this would not, at any rate until the sale had been set aside by the court, invalidate the title of the purchasers of the lease.   Bankrupt Act, § 15.

3.   The legal effect of the assumption of the lease in writ- ing by Harvey & Haviland, and their occupancy under it, is to make them both liable in covenant for the payment of rent according to the terms of the instrument.   It is entirely unnecessary that the agreement to assume should be under seal or acknowledged.   And indeed the acceptance of the possession of the property alone under the lease would seem to be sufficient.   Taylor's Landlord & Tenant, §§ 436, 438; 1 Swift Dig., 358, 364; *Williams* v. *Woodard*, 2 Wend., 487; *Lush* v. *Druse*, 4 id., 313; *Verplanck* v. *Wright*, 23 id., 506; *Allen* v. *Culver*, 3 Denio, 284; *Jacques* v. *Short*, 20 Barb., 269; *Van Rensselaer* v. *Bonesteel*, 24 id., 365; *Norton* v. *Vultee*, 1 Hall Superior C. R., 384; *Blake* v. *Sanderson*, 1 Gray, 332.

*Second.*   If not liable strictly under the covenant of the

lease, they are liable for use and occupation to the end of the term at the rate specified in the lease. Having once gone into possession they became possessed of the term, and whether they continued actually to occupy the premises or not, yet until in some manner released by the plaintiffs, are in contemplation of law so in possession as to be bound as for use and occupation for the full term. *Bacon* v. *Brown*, 9 Conn., 338; 3 Starkie Ev., 1518. And the damages are determined by the rate of rent agreed upon in the lease. *Lockwood* v. *Lockwood*, 22 Conn., 432.

*G. Stoddard*, for the defendant Haviland.

1. Staples, the first assignee of the lessee, conveyed nothing by his pretended assignment. His acts were a complete nullity.—(*a*) His assignment of this lease, as assignee of the bankrupt estate of Montague, was at private sale and unauthorized by the order or consent of any court.—(*b*) He never inventoried this lease as part of his bankrupt estate.—(*c*) The sale was not advertised.—(*d*) He filed no account, giving a report of any such sale. Bump on Bankruptcy, 168, 569.

2. Haviland was not an assignee of this lease. He did not himself procure such an assignment. He gave no authority to Harvey to purchase it or accept an assignment of it. He had no general or special arrangement with Harvey, direct or implied, by which Harvey might hire, upon the partnership account, this property, because Harvey was himself to furnish the building. It was not within the apparent scope of the partnership business. Haviland's name was attached to the written assumption of this lease without his knowledge or consent. And up to the time this suit was brought, he never knew there was such a lease in existence, or that it was claimed to have been transferred to him. And he never paid any rent for the premises.

3. Haviland never ratified or confirmed the unauthorized act of Harvey in using his name as assignee of this lease. —(*a*) Because the pretended assignment was nugatory. A void act cannot be ratified. Especially as the transfer is

required to be in writing by the statute.—(*b*) Because Haviland did not know that he or his firm were claimed to be considered assignees of this lease, nor did he know of any of the circumstances of this transfer. Before he can be held to have ratified he must be shown to have known of the material facts. 1 Parsons on Contracts, (5th ed.,) 51, and note *h; Central City Sav. Bank* v. *Walker*, 66 N. York, 430. The partnership of Harvey & Haviland occupied these premises for eight months, but Haviland neither knew of the lease, nor did he pay any rent, and his conduct was entirely consistent with his understanding that Harvey was to *furnish the building against his capital.* Nor does the fact that Haviland *signed his name* to the lease to Horn & Sons render him liable on this extended lease by way of ratification. It is to be borne in mind that there is no valid assignment to be ratified; that Haviland knew nothing of such assignment when he signed this document; that Harvey was the party who procured the lease and paid the rent; and that Harvey sold the machinery and fixtures, and executed and delivered to Horn & Son the lease in writing, signed by the defendants. Although Haviland had long since ceased to have any interest in the premises, and his partnership was long ago dissolved, yet it was quite natural for him to sign this paper for Harvey, to dispose of any interest he might be supposed to have, without ever thinking he was making himself liable on another lease for thousands of dollars of rent.

4. The plaintiffs cannot recover against Haviland for use and occupation. He never occupied the premises *as the tenant of these plaintiffs*—nor did he ever *pay rent* to them. The relation of landlord and tenant was never created between them, unless that relation was the necessary consequence of his having occupied their property as a partner of Harvey. It is evident from the finding that he did not consider himself the tenant of the plaintiffs, and that *Harvey did so consider himself*, for he always paid rent to them. How then can this relation be created between Haviland and the plaintiffs, when the record shows there was no such agreement or understanding by Haviland, and when there is one fact inconsistent with

it? But Haviland had no possession of the property after September 1st, 1876, when his partnership was dissolved and all his partnership effects were sold out. At that time Dougherty took possession and continued it, and paid rent to the plaintiffs up to January 5th, 1877. If Haviland ever was the plaintiffs' tenant, that relation must have been destroyed by the tenancy of Dougherty and the plaintiffs taking rent from him. Haviland was never in possession again. *Crouch v. Tregonning*, Law Reps. 7 Exch., 88. Again, the defendants dissolved partnership on September 1st, 1876, and all the partnership assets were sold out. There was no other partnership formed after that. How then can the plaintiffs recover against Haviland as Harvey's partner for the use of premises in the summer of 1877? It seems clear that no such claim can be made against him unless he is liable upon the written lease.

PARDEE, J. The purchase of the right to use a brewery for the period of about seven years by a member of a partnership formed for the purpose of brewing, and which was without limitation as to time, is so directly in the line and so necessary to the prosecution of its business, that if it be effected by one partner his act and signature will bind the partnership to the contract. Haviland stands precisely where he would if he had himself negotiated and signed the assumption, and if this were not true, his reception and retention of money accruing from the use of the premises under it, by and for the business and profit of the partnership, and the execution by him individually of the contract of sale of a portion of the interest acquired by it, accompanied by the reception and retention of money for such sale, constitute, so far as the plaintiffs are concerned, such an adoption or ratification of Harvey's act as to give it the same force and effect against himself as it would have had if specially authorized by him in advance.

Again, whatever exception the bankrupt or any person interested in his estate may take to the mode of transfer of the lease by the assignee, it is not necessarily for us, in this

proceeding, and in behalf of. these defendants, to say that their assumption of the lease imposed no obligation upon them, inasmuch as they with full knowledge agreed to take what he could transfer in that mode, have had undisturbed and profitable use under it by themselves, and have transferred a portion of the unexpired term to others for a valuable consideration paid therefor.

And, as between the parties, the permission to assign, the assignment, and the assumption, all in writing, are effective without seal or acknowledgement.

The Court of Common Pleas is advised to render judgment for the plaintiffs for the sum of $141.67, the rent reserved by the lease, with interest from October 1st, 1867.

In this opinion the other judges concurred.