SEAMAN vs. ASCHERMAN and another.

*April 7 — May 31, 1883.*

*Partnership — Oral agreement to execute lease — Specific performance — Waiver — Laches — Tenancy from year to year.*

1. A firm is liable, *prima facie,* for the act of one partner in its behalf, necessarily done for carrying on the business in the ordinary way, although such act was not authorized by the other partners. In such matters each partner is the general agent of the firm.
2. Defendants being the lessees of a part of the plaintiff's building in the city of Milwaukee under a lease containing the stipulations usually inserted in leases of similar property, agreed orally that in case the plaintiff made certain improvements they would execute a lease of the whole building for five years from May 1, 1878, at the annual rent of $3,000, no other terms of the lease being agreed upon. The improvements were made and defendants went into possession of the whole building, but refused to execute a lease subsequently tendered to them containing the same stipulations as

their former lease, making, however, no objection that the lease contained such stipulations. In an action for specific performance of the oral agreement, *held*, that they were properly adjudged to execute a lease containing such stipulations.

3. In such action it was immaterial whether the improvements made were or were not necessary, or whether they did or did not increase the value of the premises.

4. Specific performance is not a matter of right, but rests in the sound discretion of the court, and will only be decreed when it is altogether just, and when the party asking it comes promptly for it.

5. On January 8, 1880, the defendants, being still in possession of plaintiff's building, notified her that they would vacate the same and deliver possession to her on May 1. To such notice plaintiff made no response. In April the premises were vacated, but plaintiff's agent refused to receive the key tendered by the defendants. At about the time the premises were vacated the plaintiff made efforts to find another tenant therefor, but was unsuccessful, and on May 18, no rent being then due or unpaid, commenced this action for a specific performance of the agreement to execute a lease. *Held*,

(1) The plaintiff having previously asserted her right by a demand for the execution of the lease, was not bound to reassert it after receiving the notice of January 8.

(2) Plaintiff's efforts to find another tenant were not a forfeiture or waiver of her right to a specific performance.

(3) The failure to bring the action until after the premises were vacated was not such laches as would defeat the same.

(4) In equity the defendants were not to be considered as tenants from year to year merely, but as holding under the oral agreement for a lease.

APPEAL from the Circuit Court for *Milwaukee* County. The case is sufficiently stated in the brief of counsel for the appellant, as follows: "Upon a former appeal in this case the court held the complaint sufficient on demurrer. 51 Wis., 678. The complaint in substance alleges that the plaintiff having previously let to the defendants, who are copartners, part of a large store building, afterwards had an offer from Kirby, Newbre & Co. for the remainder thereof; that the defendants, on being informed of this, proposed to plaintiff that if she would break off negotiations with Kirby,

Newbre & Co., and make certain alterations and improve-
ments in the building, they would execute a lease of the
whole at $3,000 a year for five years from the 1st of May
then next ensuing; that the plaintiff accepted, made the im-
provements, delivered possession of the whole on the 1st of
May, and that the defendants thereafter occupied the whole,
paying the increased rent, but refused to execute a lease.   It
it is also alleged that the changes and improvements made
were solely for the benefit of the defendants' business, and
of little or no value otherwise.   All the essential allegations
of the complaint are controverted.   The answer also alleges
that defendants, in June, 1878, notified the plaintiff of their
refusal to execute a lease, and that they thereafter remained
in possession, without objection from plaintiff, until shortly
before May 1, 1880; that on the 8th of January, 1880, they
notified plaintiff that they would remove and surrender the
premises on May 1st; that the plaintiff did not object, but
acquiesced, and did not claim that the defendants had rented
the premises for five years until after they had removed
therefrom, which occurred shortly before May 1, 1880.   The
case was tried by the court, resulting in a judgment for the
plaintiff, from which this appeal is taken."

The findings of fact are for the plaintiff on all the
material allegations of the complaint, but there is no find-
ing upon the allegation in the answer of the plaintiff's
acquiescence in the notice of January 8, 1880, although the
giving of such notice and the failure of the plaintiff to re-
spond to it were proved.   On the trial the court ruled out
testimony offered by the defendants to show that nearly all
of the repairs and improvements claimed to have been made
by the plaintiff pursuant to the alleged agreement for a
lease of five years, were necessary and desirable improve-
ments to the property, and added to the value of the prop-
erty and the rental thereof as much as the improvements
cost.

For the appellant there was a brief by *Jenkins, Winkler & Smith,* and oral argument by *Mr. Winkler.* They contended, *inter alia:* 1. The contract sued on is void by the statute of frauds. The only circumstances to take it out of the statute are part performance. "Nothing is to be considered as a part performance which does not put the party into a situation which is a fraud upon him unless the agreement is fully performed." Story's Eq. Jur., § 761. In the case of contracts of purchase, the taking of possession, together with payment of the consideration, has often been held sufficient. In such cases the party in possession is either a purchaser or a trespasser, and no other agreement being claimed, the possession is necessarily referred to the particular contract of purchase. Story's Eq. Jur., § 762; *Semmes v. Worthington,* 38 Md., 298; *C. & O. Canal Co. v. Young,* 3 id., 480; *Knoll v. Harvey,* 19 Wis., 99; 1 White & Tudor's L. C. in Eq., 630, 631. Where the possession is at all equivocal in its nature, the expenditures of money in improvements which would be lost unless the contract be performed, becomes an important link. Story's Eq. Jur., §§ 763, 763*a.* The possession of a tenant does not prove a leasing for a definite term. His leaving and throwing upon the lessor the burden of finding another tenant does not involve such a fraud as should move a court of equity to decree performance of an agreement confessedly void at law. Hence the complaint alleges that the plaintiff, at the request of the defendants, made improvements, many of which were of no value for the purposes of any other business than that of the defendants. And it was error to refuse to permit the defendants to show that the improvements were all essential to the use of the building itself, and required by the wants of any business. 2. "A court should not decree specific performance of a parol contract (void by the statute of frauds), even where there is a preponderance of testimony in favor of the existence of such contract, if either the making of the same or its essen-

tial terms are left in doubt." *Knoll v. Harvey*, 19 Wis., 99; *Tiernan v. Gibney*, 24 id., 190; *Bowen v. Warner*, 1 Pin., 600; *Blanchard v. McDougal*, 6 Wis., 167; Story's Eq. Jur., §§ 764–7. The evidence in this case, at most, established a parol agreement to take the premises for five years. To hold this to be equivalent to an agreement to execute a written lease for that period would make of the statute of frauds a worse than useless piece of imposition. *Campbell v. Thomas*, 42 Wis., 453; Story's Eq. Jur., §§ 765–6. 3. The laches and conduct of the plaintiff have been such that she cannot insist upon a lease. Specific performance is not a matter of right, but will be granted only where it is altogether just, and where the party seeking it comes promptly. *Williams v. Williams*, 50 Wis., 311; *Benson v. Cutler*, 53 id., 107; *Milward v. Earl Thanet*, 5 Ves., 720n; Fry on Sp. Perf., secs. 730, 732, 736, 737; *Haughwout v. Murphy*, 21 N. J. Eq., 118; *Delavan v. Duncan*, 49 N. Y., 485; *Campbell v. Hicks*, 19 Ohio St., 433; *Eastman v. Plumer*, 46 N. H., 464; *McDermid v. McGregor*, 21 Minn., 111; *Cheney v. Cook*, 7 Wis., 413. "If one of two parties concerned in a contract respecting lands, gives the other notice that he does not hold himself bound to perform and will not perform the contract between them, and the party to whom the notice is given makes no prompt assertion of his right to enforce the contract, equity will consider him as acquiescing in the notice and abandoning any equitable right he may have had to enforce the performance of the contract." 2 White & Tudor's L. C. in Eq., 1056 (*532), note to *Seton v. Slade; Heaphy v. Hill*, 2 Sim. & Stuart, 29; *Watson v. Reid*, 1 Russ. & M., 236; *Walker v. Jeffreys*, 1 Hare, 341; *Southcomb v. Bishop of Exeter*, 6 id., 213; *Eads v. Williams*, 4 DeG., McN. & G., 691. Under the facts of this case the defendants became tenants from year to year. *Laughran v. Smith*, 75 N. Y., 205; *People v. Rickert*, 8 Cow., 226; *Lounsbery v. Snyder*, 31 N. Y., 514; *Reeder v. Sayre*, 6 Hun, 552; *S. C.*,

70 N. Y., 180; *Craske v. C. U. Pub. Co.*, 17 Hun, 319; *Larkin v. Avery*, 23 Conn., 304; Taylor on L. & T., secs. 79, 80.

For the respondent there was a brief signed by *Flanders & Bottum*, as attorneys, and *Finches, Lynde & Miller*, of counsel, and oral argument by *Mr. Flanders*.

LYON, J.  This court has once held that the complaint, standing alone, states facts which, if true, entitle the plaintiff to have specific performance of the agreement therein alleged.  51 Wis., 678.  The circuit court has found, substantially, that all of the material facts therein stated are true.  If the proofs sustain such findings, the judgment is undoubtedly right, unless the alleged acquiescence of the plaintiff in the notice by the defendants of January 8, 1880, that they would vacate the premises and surrender the same on May 1st thereafter to the plaintiff,— and her subsequent acts and delay in enforcing her rights,— or unless the rejection of the testimony offered to show the nature of the alleged improvements and the effect thereof upon the value of the premises, is fatal to the judgment.  The finding of an agreement for the execution of a five years' lease, is the only finding of fact upon which error is assigned.  From this brief statement of the position of the case as presented by this appeal, it is obvious that, at most, but three questions are to be determined.  These are: (1) Does the testimony support the finding that the alleged verbal agreement for the execution of a lease for five years was made?  (2) If so, is the omission of the plaintiff to respond to the notice of January 8, 1880, and her subsequent acts and delay, fatal to the plaintiff's right to have specific performance of such agreement?  And if not, (3) was the rejection of the offered testimony just mentioned a material error?  These questions will be considered in the order stated.

1. The evidence is ample that the defendant *Segnitz* made

the agreement on behalf of his firm, with the son and agent of the plaintiff, to execute a lease for five years, as alleged in the complaint. Such agent testified that *Segnitz* first proposed to make a five years' lease, and that after the improvements were made and the defendants went into possession of the whole of the leased premises under the agreement, *Segnitz* expressly admitted that he agreed to sign a five years' lease. There is, also, other testimony to the same effect. All this is denied by *Segnitz*, but, to say the least, there is no such clear preponderance of proof against the claim that the agreement was for the execution of a five years' lease, as will authorize us to disturb the finding in that particular. All of the negotiations were with the defendant *Segnitz*. There is no proof that his partner, the defendant *Ascherman*, ever expressly assented to the agreement. On the contrary, he objected to a five years' lease in his conversations with *Segnitz* on the subject. It does not appear that such objection was made known to the plaintiff or her agent until after her improvements were made and the defendants had gone into possession of the premises leased, except *Segnitz* testified that pending the negotiations he told plaintiff's agent that he knew *Ascherman* would not sign a five years' lease, and the agent wanted *Segnitz*, if he could, to overcome such objection. This was little more than the expression of an opinion that *Ascherman* was opposed to an agreement for a five years' lease. It comes far short of a notice to the plaintiff, that the firm would not be bound by such an agreement should *Segnitz* make it.

It appears from *Ascherman's* testimony that he knew the plaintiff desired the firm to lease the premises for five years. Under this state of facts it becomes material to determine whether *Ascherman* is bound by the agreement, for, if he is not, the firm is not bound, and the action will fail. The rule of law is that a firm is liable *prima facie* for the act of one partner in its behalf, necessarily done for carrying on

the partnership business in the ordinary way, although such act was not authorized by the other partners. 1 Lindley on Part., 236. In such matters each partner is the general agent of the firm, and the above rule has its foundation in the law of agency. It was certainly necessary to the carrying on of the business of the defendants in the ordinary way that they should have a proper building in which to transact it. During most of the time they occupied a portion of the plaintiff's building under the lease of 1875; they also, by permission of plaintiff, occupied to some extent the remaining portion thereof. It is alleged in the answer that they occupied the whole of such remaining part for store-rooms for their tobacco and goods from the fall of 1876, and had the keys thereof. The plaintiff knew that the exigencies of the defendants' business made it necessary that they should use the whole building. There can be no doubt of the existence of such necessity, for the only reason the defendants assigned in their notice of January, 1880, for abandoning the premises, was the necessity of removal "to more capacious quarters." Moreover, *Mr. Ascherman* testified that "*Mr. Segnitz* paid attention to the leases in connection with our firm." That is to say, the business of leasing property for the use of the firm was intrusted by the firm to *Segnitz*.

Under these circumstances, we think this case is within the rule above stated, and that the firm is bound by the agreement for a lease made in its behalf by *Segnitz*.

While on this branch of the case, another objection may be noticed. It is said by the learned counsel for the defendants that the testimony does not show that any terms of the lease were agreed upon, except that it should be for the whole building for five years, at the annual rent of $3,000. So far as proof of any other express stipulations are concerned, the statement is true. But it must be remembered that the defendants were, when the agreement was made,

the lessees of most of plaintiff's building, holding under a
written lease, containing various stipulations usually inserted
in leases of similar property in the city of Milwaukee; that
the same stipulations were inserted in the lease tendered to
the defendants for execution (which the court adjudged
they should execute), and that no objection was made to the
lease so tendered because it contained those stipulations.  Be-
sides, there is no suggestion in the record that the defend-
ants ever claimed that any of those stipulations were to be
omitted from the new lease, and all reasonable probabilities
are that they performed all such stipulations during the
time they held under the new lease, or the agreement there-
for.  In view of these facts we think it was correctly held
that the parties contemplated that the stipulations of the
lease of 1875 should be imported into the lease agreed for —
varied only by the express enlargement of the premises
leased to include the whole building, the extension of the
term to five years, and the increase of the rent from $2,700
to $3,000 per annum.  Moreover, the lease presented to the
defendants for execution contained the covenants usual in
leases of business property in Milwaukee.  *Kusel v. Watson*,
38 L. T. Rep., 604, is authority that under an agreement for
a lease generally, specific performance of a lease containing
covenants will be decreed.  The case was decided by Vice-
Chancellor BACON in 1878.

We conclude that the evidence supports the finding that
the alleged verbal agreement to execute a lease for five years
was made, and that the circuit court correctly determined
the form and substance of the lease agreed for.

2. On or about January 8, 1880, the defendants served the
plaintiff with the following notice: " Milwaukee, January 8,
1880.  *Mrs. Mary Seaman*, City.  Madam: Owing to the
necessary removal of our factory to more capacious quarters,
we shall vacate the premises we now occupy, and will be ready
to surrender to you possession thereof on May 1st, next.

Very respectfully, ED. ASCHERMAN & Co." To this notice the plaintiff made no response. The defendants vacated the premises in April, 1880, and tendered the keys thereof to the plaintiff's agent, who refused to receive them. This action was brought May 18, 1880. Just before the premises were vacated a real estate agent advertised the premises for rent, at the request of a son of plaintiff, whose agency for the plaintiff in the matter is denied, and the testimony tends to show an attempt by the plaintiff's son, who was her agent, to rent the premises to another party about the time defendants vacated them. These are believed to be all of the material facts bearing upon the alleged acquiescence or laches of the plaintiff. It is argued that they are sufficient to prevent the interposition of a court of equity to adjudge the specific performance of the agreement for a five years' lease. The argument is based upon the elementary doctrine that specific performance is not a matter of right, but rests in the sound discretion of the court, and will only be decreed when it is altogether just, and when the party asking it comes promptly for it.

When the notice of January 8, 1880, was served upon the plaintiff, the defendants knew perfectly well that she claimed herself entitled to the execution on their part of a lease for five years, and they could not, by serving such a notice, compel her, at the peril of losing her equitable remedy, to reassert that claim. If they could, they might have served such a notice each day, and thus have compelled her to assert daily that she insisted upon a performance by them of their agreement. This would be intolerable. The plaintiff had demanded that the defendants execute the lease pursuant to the agreement, and such demand, until she saw fit to withdraw it, was a perpetual notice to them that she stood upon the agreement, and relied upon every remedy to enforce it which the law gave her. No mere notice that they proposed so to act as to drive her to seek such remedy, could lay upon her

the burden of reasserting her rights.  See *Kelly v. Phelps*, *ante*, p. 425.  Besides, there is no testimony tending to show that her silence prejudiced the defendants, or affected their conduct in the least.  Indeed, when the plaintiff sought to show by the defendant *Segnitz* that the defendants leased the premises to which they removed their business before the notice of January 8, 1880, was given, counsel for defendants objected to the testimony, and the court sustained the objection.

Again, if it be assumed that the plaintiff made efforts to find another tenant for her property about the time the defendants vacated it, we do not think that fact interferes with her right to have specific performance of the agreement for a lease.  She might well shrink from the delay, annoyance, and expense of a litigation with the defendants to enforce her rights, by finding, if she could, another tenant for her property.  Succeeding in that, she might indemnify herself against loss by reason of the conduct of the defendants, and thus avoid litigation.  Her efforts in that direction worked no injury to the defendants.  Had she succeeded, it would have been a great benefit to them.  We perceive nothing in those efforts upon which to predicate a claim that she has forfeited or waived thereby the cause of action which she here asserts.

This brings us to the question whether or not the failure of the plaintiff to bring her action until after the defendants vacated her premises is such laches on her part as makes it the duty of the court to deny specific performance.  The testimony tends to prove, perhaps proves, that the defendants refused, in the summer of 1878, to execute the lease, and again refused when applied to on behalf of the plaintiff to do so, in November, 1879.  The law requires prompt action of one who would enforce specific performance of a contract.  In *Cheney v. Cook*, 7 Wis., 413, this court quoted approvingly the general rule frequently laid down in the

books, that "there can be no doubt that mere delay to en-
force a contract, apart from any default, may constitute a
bar to a specific performance in equity, when it has resulted
in a change of attendant circumstances of such a nature as
to render it inequitable to enforce it." But, under that rule,
the question arises, When does the obligation to commence
an action fasten upon the party seeking specific performance?
When does delay begin? This question has been answered
by some of the courts in cases analogous to this.

In *Sharp v. Milligan*, 22 Beav., 606, decided in 1856, a
firm consisting of two Milligans and Jowett made a parol
agreement with Sharp, the owner, for the lease of a mill and
factory, for the purposes of their business, for twenty-one
years, determinable at the end of ten years. This was in
1841. In 1843 Jowett signed an agreement with Sharp in
the name of the firm for such lease, by which agreement the
firm was held bound. The partnership was dissolved in
1847, and Jowett retained possession of the premises and
paid the rent until November, 1854, but neglected to pay
the rent which became due in May, 1855, and became bank-
rupt in the same month. On the dissolution of the partner-
ship the Milligans notified Sharp that they were no longer
his tenants. Action for specific performance of the agree-
ment of 1843 was commenced in July, 1855, and specific
performance thereof by all of the former partners was
decreed. After stating and affirming the rule that a person
must come speedily for specific performance, or not at all,
and distinguishing the case from those cases in which this
rule had been applied (in which cases it is said the contracts
had not for a long period been acted on at all), Sir JOHN
ROMILLY, the master of the rolls, proceeded as follows: "It
appears to me extremely difficult to apply that principle to
this case. Suppose the simple case of a landlord entering
into a contract to let a farm or a mill to a tenant for twenty-
one years, and they proceed upon this footing: — the tenant

takes possession and pays the rent annually, from year to year, for a period equal to that which has taken place on the present occasion, which, I think, amounts to something like thirteen or fourteen years, and then the tenant refuses to pay any more. It is obvious, on that simple statement of the case, that the landlord then coming for specific performance of the contract — that is, to enforce the execution of the lease — could not be said to have been sleeping upon his rights for thirteen years, because the parties have been relying upon their equitable rights, without thinking it necessary to have their legal rights perfected. Is this a case of that description or not? If it is, then the memorandum of agreement has been acted upon until the year 1854, when Mr. Jowett became a bankrupt, and it is only from that time that any delay can be imputed to the plaintiff; but after that time the bill is filed within two months of the first arrear in the payment of the rent. The rent was very regularly paid up to that time, and it was quite sufficient for the lessor, if one of the lessees in possession paid the rent. He might well say, I do not wish to put you to the expense of a lease, provided the rent is paid during the whole of the time. I see nothing to make it necessary for the landlord to come for the execution of the lease until the rent ceased to be paid."

*Shepheard v. Walker*, 33 L. T. Rep. (N. S.), 47, decided by Vice-Chancellor BACON in 1875, is still a stronger case for the plaintiff. The head-notes, which sufficiently state the case and the points decided, are as follows: "In 1857 A. agreed to grant B., in consideration of a premium of £600, a lease of a messuage for a term of thirty-one years at the yearly rent of £100,— the premium to be paid on the day fixed for completion,— and if from any cause whatever the lease was not completed on the day fixed, B. was to pay interest on the premium until completion. B. was then in possession of the messuage under an

expiring lease granted in 1826 for thirty-one years, at the rent of £100. A draft of the new lease was sent to B., who never returned it, or in any way signified his approval of it; nor did he pay the premium or any interest. He, however, continued in possession of the premises, and paid A. the yearly rent of £100 down to the 25th of March, 1866. A. died in 1871 without having required B. to complete the lease, and without having ever demanded payment of the premium or any interest. On a bill filed by A.'s executor for specific performance of the agreement, held, that there had been no laches or abandonment of the agreement on the part of A., and that B. was bound to complete the lease, and to pay the premium, together with interest thereon from the day fixed for completion."

In all essential particulars the above cases are strikingly like the present case, with this difference, perhaps, that there the circumstances upon which the claim of laches was based were stronger against the plaintiff than they are here. In this case the rent was paid to May 1, 1880, and none was due when the action was commenced. The reasoning of those cases, and the results reached by the court, commend themselves to our judgment. We do not discover that the doctrine of the above cases has been questioned or doubted, either in England or this country. *Shepheard v. Walker*, *supra*, is referred to and distinguished in *Davenport v. Walker*, 34 L. T. Rep. (N. S.), 168, and in *Powis v. Lord Dynevor*, 35 L. T. Rep. (N. S.), 940, in both of which specific performance was denied. The difference is stated to be that in *Shepheard v. Walker* the landlord was enforcing an agreement on a tenant who (as here) had the means of fulfilling it in his own hands, and it was the tenant's own fault that he neglected to do so, while in the cases there under consideration the facts were otherwise. See, also, *Rankin v. Lay*, 2 De G., F. & J., 65.

After very careful investigation and consideration, we are

impelled to the conclusion that the plaintiff is not chargeable with laches which defeats her right to have specific performance of the defendants' agreement to execute on their part a lease for five years, and hence that they are not, in equity, to be considered as tenants from year to year merely, but as holding the premises under the parol agreement for a five years' lease thereof. Of course, in an action at law for rent, they would be regarded as tenants from year to year. The cases cited on behalf of the defendants to this point are actions at law.

3. The remaining question suggested at the commencement of this opinion may, we think, readily be disposed of. The testimony is very clear and satisfactory that the improvements made by the plaintiff on the leased premises, at a cost of $1,200, were made under and pursuant to the agreement for a five years' lease, and as part performance thereof, and not otherwise. The circuit court so found. Hence, it seems quite immaterial whether the improvements were or were not necessary, or whether they did or did not increase the value of the premises and rental of the same. Those would be proper matters for inquiry in an action at law to recover damages for nonperformance of the agreement, could such an action be maintained, but they have no significance in an action for specific performance of the agreement. We think, therefore, that the court very properly rejected all testimony of the necessity, or value to the premises, of such improvements.

It follows that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.