## LAWER v. KLINE
(No. 1488; October 16, 1928; 270 Pac. 1077).

*M. C. Burk* and *John D. Dawson,* for appellants.

*A. C. Allen* and *O. N. Gibson,* for respondent.

BLUME, Chief Justice.

This was an action for rent brought by H. C. Lawer against E. A. Kline, David Kline and Morris Kline, co-partners doing business under the firm name of Kline's. Eight actions, each brought to recover rent, were consolidated and tried as one action. The plaintiff recovered judgment for the sum of $1699.94, less a deduction of $416.06, and the costs of the action. From the judgment so rendered, the defendants appeal. The parties will be hereinafter named as in the court below. The partnership conducted a clothing business in the town of Riverton. The term during which it was to last does not appear, but it seems to have been unlimited as to time.

Each of the actions was brought to recover rent, though for different periods, under a written lease made and executed on January 8, 1923 and signed by H. C. Lawer as lessor, and the partnership above named, by David Kline, one of the partners, as lessee. The lease was for the period of five years, and reserved a monthly rental of $177.50 for the first two years and a monthly rental of $190 during the remainder of the term. The dispute herein arises by reason of the increased rental during the last three years. It was contended by the defendants that according to the verbal arrangements made previous to the execution of the written lease, it had been agreed that the lease of January 8, 1923 should be upon the same terms and conditions as a previous lease for these premises, which, too, was for five years and which reserved a rental of $177.50 per month throughout the term, and that David Kline, one of the partners, had no authority to execute the lease in question, and that the

only partner who had such right was E. A. Kline. The defendants claim that the plaintiff had knowledge of the limited authority of David Kline, but this was denied by the plaintiff, and the court having found in favor of the latter, this disputed point must be deemed to be settled herein accordingly.

1. The main question herein is as to whether or not the lease of January 8, 1923, was binding on the partnership. Counsel for defendant contend that it was void, for the reason that the person signing had no authority to bind the partnership or the other members of the partnership to a lease for a term of years, and that, further, the lease comes within the provisions of the statute of frauds which provides, among other things (Section 4719, W. C. S. 1920):

"In the following cases every agreement shall be void unless such agreement or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith: * * * Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year."

The assignment of error involves, it will be noticed, two distinct questions, namely, (1) whether a partner has implied authority to execute a lease on behalf of the partnership for a term of years—in this case for five years, and (2) whether the lease is violative of the statute of frauds above mentioned. We shall discuss these questions in the order named.

The first point arose in the English courts in 1856 in the case of Sharpe v. Milligan, 22 Beav. 606, 52 Eng. Reprint 1242. In that case one of the partners had executed a lease for the partnership to last for the period of twenty-one years, and the Master of the Rolls said on this point as follows:

"I do not think it necessary to decide this point, but I am disposed to concur in the argument that where persons simply enter into an agreement to carry on a partnership

of which the term is not fixed, one of those partners would not have authority within the scope of the partnership contract to take a lease for twenty-one years and to bind the other partners.''

It may be noted that the Master of Rolls based his reason apparently upon the ground that a partner had no right to make a lease beyond the term for which the partnership was to last. He would not presume that one formed for a term which was not fixed would last for twenty-one years. The case is of doubtful authority in favor of the defendants, for the reason that leases for twenty-one years are, perhaps, somewhat unusual in case of partnerships, while leases of five years are not, and it is not unlikely that the Master of Rolls might have presumed, in case of a partnership formed for an indefinite period of time, that it would continue for at least five years.

In Koch, et al. v. Endriss, et al., 97 Mich. 444, 56 N. W. 847, decided in 1893, the court held that the lease was not binding, inasmuch as it was a specialty, the court saying in part:

''It is a general rule of law that one partner cannot bind his co-partner upon a specialty unless he is authorized under seal, or unless he executes the instrument in the presence of and with the assent of his partner, or unless there is a prior parol assent or subsequent parol ratification.''

That, too, was the holding in the case of Larkin & Co. v. Faggen, 71 Pa. Super Ct. 430, in which the court said, among other things:

''It is conceded by the learned counsel for the appellant that one partner cannot bind another by a sealed instrument, and many authorities compel this concession, among which is the recent case of Funk v. Young, 241 Pa. 72. The implied authority arising out of the relationship to bind each other is limited to ordinary dealings within the scope of the business of the partnership, but contracts under seal relating to future action are out of the usual course of business and are not recognized as binding upon non-assenting partners.''

Bates on Partnership, Sec. 413, commenting upon the rule of a partner not having implied power to bind the firm by an instrument under seal, states that the rule originated in the doctrine that if he could do so it would enable him to convey the real estate of the firm or create liens upon it to the preference of favorite creditors. The author thinks the reasons insufficient to justify the rule and points out, among other things, that if it is not based upon a better reason the curious result follows that the abolition in many of the states of all differences between sealed and unsealed instruments has enlarged the implied powers of partners. The difference between sealed and unsealed instruments has been abolished in Wyoming, although deeds and mortgages are, for certain purposes at least, required to be executed with certain formalities required by statute, and we shall not attempt to determine what bearing, if any, these requirements have on the point now under discussion. But a lease need not be under seal; nor need it be acknowledged; a simple writing evidencing the contract and the terms thereof is, generally speaking at least, sufficient without seal or any other similar formality, and we do not, accordingly, think that the rule stated in the Michigan and Pennsylvania cases, supra, applies here.

Some of the cases distinctly uphold the implied authority of one partner to execute leases of the character in question here. We shall leave out of consideration cases which have no direct bearing here, as for instance Penn v. Kearney, 21 La. Ann. 21, which involved a lease for one year, or Sweet v. Wood, 18 R. I. 386, 28 Atl. 335, which involved the question of hire of horses; and see a few others cited in 30 Cyc. 490.

The case of Stillman v. Harvey, 47 Conn. 26, decided in 1879, involved a lease for seven years which was taken over by one of the partners for the partnership, but where the agreement of the other partner was not obtained. The court said:

"The purchase of the right to use a brewery for the period of about seven years by a member of a partnership formed for the purpose of brewing and which was without limitation as to time is so directly in the line and so necessary to the prosecution of its business that if it be effected by one partner his act and signature will bind the partnership to the contract. Haviland (the party not agreeing) stands precisely where he would if he had himself negotiated and signed the assumption."

The case of Seaman v. Ascherman, 57 Wis. 547, 15 N. W. 788, involved an agreement made by one partner on behalf of a commercial partnership to enter into a lease for five years. The court held the agreement binding, saying in part as follows:

"The rule of law is that a firm is liable *prima facie* for the act of one partner in its behalf, necessarily done for carrying on the partnership business in the ordinary way, although such act was not authorized by the other partners. 1 Lindley on Part. 236. In such matters each partner is the general agent of the firm, and the above rule has its foundation in the law of agency. It was certainly necessary to the carrying on of the business of the defendants in the ordinary way that they should have a proper building in which to transact it. During most of the time they occupied a portion of the plaintiff's building under the lease of 1875; they also, by permission of plaintiff, occupied to some extent the remaining portion thereof. * * * The plaintiff knew that the exigencies of the defendants' business made it necessary that they should use the whole building. There can be no doubt of the existence of such necessity, for the only reason the defendants assigned in their notice of January, 1880, for abandoning the premises, was the necessity of removal 'to more capacious quarters.' * * * Under these circumstances, we think this case is within the rule above stated, and that the firm is bound by the agreement for a lease made in its behalf."

In the case of Woolsey v. Henke, 125 Wis. 134, 103 N. W. 268, the lease was for a term of five years and was entered into for the partnership by its manager, Henke, one of the partners. The court said in part:

"The respondents urge, as an obstacle to this conclusion, that there is no finding of fact that Henke had any authority, as a partner, to bind the firm to the making of a lease. The evidence is uncontradicted that the business involved was the editing and publishing of a local newspaper. We have no hesitation in holding that the leasing of premises in which to conduct it is within the general scope of such a business, and hence that there exists *prima facie* authority in a partner to bind the firm therefor. Stillman v. Harvey, 47 Conn. 26; Seaman v. Ascherman, 57 Wis. 547, 15 N. W. 788."

Similar in effect are Fincher & Womble v. Hanson, 12 Ga. App. 608, 77 S. E. 1068, and Marks v. Chumos, 82 Kans. 562, 109 Pac. 397. These two cases will again be referred to later.

The review of these cases—and they seem to be all that have any particular bearing on the question at hand—shows, we think, that the decided weight of authority is to the effect that a partner has implied authority to execute leases of the character here under discussion, when they are necessary and appropriate to carry on the business of the partnership, and that such leases are binding upon it, unless, of course, the partner who signs has no actual authority, and the want thereof is known to the lessor. Such holding seems to simply carry to its logical conclusion the general rule that each partner has implied authority to bind the firm and each member thereof by contracts in the firm name which are within the scope of the firm business as that is ordinarily conducted. Aside from these authorities, however, we must further bear in mind Section 9 of the uniform partnership act, which was adopted in this state in 1917, and which appears as Section 4180, Wyo. Comp. Stat, 1920, and which reads in part as follows:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name *of any instrument,* for apparently carrying on in the usual way the business of the partnership of which he is a member binds

the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing had knowledge of the fact that he has no such authority.''

The provision does not, so far as the point involved here is concerned, seem to have received any judicial construction heretofore. Those who drafted it doubtless had in mind the conflicting authorities on that point, and seem to have definitely settled the dispute in favor of what we have stated to be the prevailing view. The controlling point in this case, accordingly, seems to be as to whether or not the lease in question is within the limitation expressed in the section, namely, that it was executed to carry on the business of the partnership in the usual way. We think it is. The partnership needed *some* lease to carry on its business. We do not think that leases lasting for five years are at all out of the ordinary, as is indicated in the case above cited. Past transactions may be taken into consideration in determining this point. Maasdam v. Blokland, 123 Or. 128, 261 Pac. 66. And as we have seen, the partnership had a lease lasting for five years previous to the time that the lease in question was taken. In fact, leases lasting only a short time could, in the nature of things, not be satisfactory unless perchance in those cases in which a partnership is formed for only a short and definite period of time. We conclude that David Kline had implied authority to execute the lease in question, which was binding upon the partnership in the absence of knowledge by plaintiff of his actually limited power.

If, however, we are wrong in the foregoing conclusion, still the defendants in error must be held to have ratified the lease in question through E. A. Kline, who at least had authority to sign it. The partnership had the benefit of the lease for the period of two years without in any way questioning it. The claim that E. A. Kline supposed that the new lease was upon the same terms as the old one is without merit. It is altogether unreasonable to think that.

he, who claimed to be executive head of the partnership, should not, during all that time, have made some inquiry into the actual terms embodied therein. Further than that, it stands undisputed that in October, 1924, plaintiff sent him a copy of the lease, and he admits that he read it, but he made no objection to it whatever.

The second point involved in the foregoing assignment of error, namely, in connection with the statute of frauds, has, so far as we can find, been directly discussed in only two cases, although, it would seem, it might properly have been raised in most of the cases above cited. It is argued in this connection, in the first place, that in order that one partner, as agent for the partnership, may bind other members thereof on a lease for longer than one year, such lease being similar to a contract for the acquisition of an interest in real estate, he should have written authority to do so. This point was directly before the court of appeals in Georgia in the case of Fincher & Womble v. Hanson, supra, and in which the court refused to subscribe to the doctrine for which counsel for the defendants contend. The court said in part:

"The lease contract was objected to upon the ground that one partner had no right to bind the firm under seal, unless he had written authority under seal from the other partners to do so. The lease was further objected to on the ground that the attorney for the plaintiff who drafted the lease was one of the attesting witnesses. Neither of these objections was well taken. One partner has the right to bind another partner by any contract within the scope of the partnership business. He may execute promissory notes under seal, and thereby incur indebtedness in reference to any matter within the scope of the partnership business. He may execute bonds in a legal proceeding. * * * It has never been ruled that his authority to execute such an instrument must itself be under seal. The authority is implied from the partnership relation, and it is entirely immaterial whether the partnership articles be under seal or not."

And this case is in accord with the general rule stated in 27 C. J. 296 that "in the absence of statutory requirements, however, an agent need not be authorized in writing to sign a memorandum of the contract for the sale or the purchase of land." Apparently the only other case in which the statute of frauds, as relating to leases, was discussed is the case of Marks v. Chumos, 82 Kans. 562, 109 Pac. 397, in which the lease was taken in the name of only one of the partners, and the court said in part:

"The appellant also contends that the lease for three years, not having been signed by him, and not having been signed in writing to him, is void as between him and the lessor, under the statute of frauds and perjuries (Section 3837 of the General Statutes of 1909), and that his oral agreement to assume the obligations of Limperakis is void under Section 3838 of the General Statutes of 1909. There was evidence tending to show that Chumos and Limperakis were copartners in the business to be carried on on the leased premises, and that the lease was made in the interest of and for the benefit of the copartnership, and that the copartnership accepted the lease and occupied the premises under it for a time. Authorities are abundant that, if one partner had purchased the property and taken a deed thereto in his own name under like circumstances, the real estate would become the property of the copartners, and that the partner taking the legal title would hold the same in trust for the benefit of himself and his copartner, and that the copartner could assert his interest in the property, although he had no written conveyance thereof. The principle applies to this case and the lease of the copartner became the lease of Chumos, for whose benefit it was in part made."

The general rule undoubtedly is, as stated in 27 C. J. 299, that:

"Provided the transaction is within the scope of the firm business, a partner may sign, so as to comply with the requirements of the statute of frauds, by the act of one partner in signing the partnership or his individual name."

But it is argued that the rule should be otherwise under our statute of frauds, which requires the agreements there mentioned to be signed by the "party to be charged" without mentioning that it might be signed by an agent; that, in fact, under such a statute, no agent whatever is authorized to sign on behalf of the "party to be charged." Statutes of this character are discussed in 27 C. J. 292, 300, and from the cases there cited it appears that the English courts have taken the view contended for herein, but in cases altogether different from the case at bar. The cases cited seem all to be confined to holding that a partnership or corporation cannot be held responsible for misrepresentations—which, perhaps, would not be within the scope of the partnership business in any event—of one of the partners or an agent of a corporation. The case of Fordyce v. Seaver, 74 Ark. 395, 85 S. W. 1126, 4 Ann. Cas. 892, on the contrary, holds that under a statute similar to ours, a contract for the sale of goods may be signed for the partnership by one of the partners. The English statute of frauds is more varied than ours, and provides that in some cases the memorandum required to be signed must be signed "by the party to be charged," in others that it must be signed by an agent duly authorized in writing, in still others that it must be signed by an agent duly authorized. See Hyde v. Johnson, 12 Bing. N. C. 776, 29 E. C. L. 757, 132 Eng. Repr. 299, and this fact, doubtless, should be taken into consideration in construing our statute. But whatever the rule might be under it in other cases, we must, in construing it in this case, take into consideration Section 4180, supra, part of the uniform partnership law, which authorizes a partner to sign *any instrument,* if executed in connection with the usual course of business of the partnership. The framers of that provision knew, of course, the existence of the statute of frauds in every state in the Union, and they knew further, that innumerable leases are constantly made for terms lasting longer than one year, and it would be strange, indeed, that, while making such sweeping pro-

vision as above mentioned, they should not have intended to include leases of the character in question here. And we need not mention the troublesome points that might arise, had that been true, in regard to silent partners and partners coming into an existent partnership after the execution of such a lease. We think that the contention of counsel for defendants should be overruled.

We might add here that we must not be understood as intimating that Section 4180 in any way affects special statutes relating to instruments to be signed by a partnership, for instance, chattel mortgages; for the legislature seems thereby to have declared that the execution of such instruments by one of the partners is not within the scope of the partnership, or that the signing thereof by only part of the members of the partnership is not good public policy.

2. There are a few other errors assigned in this case, none of which are of importance and none of which we deem to be well taken. It appears, for instance, herein that for the period of six months the plaintiff rebated the sum of $12.50 of the rental; in other words, during that period accepted the same rental as had been provided in the first lease, but there is no agreement shown herein between the parties that the rebate should be given continuously. Another point argued is that the plaintiff partially evicted the defendants from the leased premises by reason of erecting a gasoline pump in front of the building. So far as we are able to gather from the record, this gasoline tank was not in front of the leased premises, but approximately two feet away from it. Nor is it shown that the plaintiff has sustained any damages whatever. Again, it is argued by counsel for defendants that defendants should recover their costs herein. The first action brought herein by plaintiff was for the sum of $190.00. Defendants set forth certain counter claims and set-offs, among other things claiming an allowance for merchandise sold to the plaintiff. The court allowed the sum of $416.06. Inasmuch as this allowance was greater than the claim of the first action, counsel

think that defendants ought to be entitled to their costs. No authorities to that effect have been cited. The eight actions were consolidated, tried and treated as one action, and we can see no merit in the contention that the costs should not follow in this case the same as in any other case where the plaintiff recovers a judgment and in which he is allowed his costs.

It follows that the judgment herein should be affirmed, and it is so ordered.

*Affirmed.*

· KIMBALL and RINER, JJ., concur.