RELIABLE PHARMACY and others, Respondents, v. HALL, Appellant: PEMBER, Defendant.*

*No. 254. Argued February 2, 1972.—Decided February 29, 1972.* (Also reported in 194 N. W. 2d 596.)

* Motion for rehearing denied, with costs, on May 2, 1972.

194

For the appellant there were briefs by *Herro, McAndrews & Porter, S. C.,* and oral argument by *Jack R. DeWitt,* all of Madison.

For the respondents there were briefs by *Leo H. Hansen, William T. Henderson,* and *Hansen, Eggers, Berres & Kelley,* all of Beloit, and oral argument by *Leo H. Hansen.*

HEFFERNAN, J.  We are satisfied, on the basis of the facts revealed in this record, that Dr. Pember had full and actual authority to bind the partnership when he executed the 1963 employment agreement with Hall.  The result to be reached in this case is governed by secs. 178.06 (1) and (2), Stats., of the Uniform Partnership Act:

"**Partners are agents of partnership.** (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

"(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."

The Uniform Partnership Act was adopted in this state in 1915.  It codifies the common law of partnership.  As

early as 1883 in *Seaman v. Ascherman* (1883), 57 Wis. 547, 553, 554, 15 N. W. 788, this court said:

"The rule of law is that a firm is liable *prima facie* for the act of one partner in its behalf, necessarily done for carrying on the partnership business in the ordinary way, although such act was not authorized by the other partners. [Citation] In such matters each partner is the general agent of the firm, and the above rule has its foundation in the law of agency."

Under sub. (1) of the statute and the common law, each partner is the agent for the partnership and he may bind the partnership by his acts if they are "for apparently carrying on in the usual way the business of the partnership . . . ." On the other hand, sub. (2) provides that an act of the partner "not apparently for the carrying on of the business of the partnership in the usual way" does not bind the partnership unless the other partners authorize the act.

The trial court found as a matter of fact that at all times Dr. Pember was "the managing partner." He also found, however, that from the time Dr. Pember left Wisconsin, John R. Hall managed the pharmacy with little direction from any of the partners and that even Dr. Pember's participation was minimal. He also found that the other partners, with the exception of the trustee, did not participate at all. As a matter of law, the trial judge found that Dr. Pember was a general partner and was the general agent for the partnership and he had the power to employ third persons in the ordinary course of the business of the partnership. Despite these conclusions of law and the findings of fact which support that conclusion, he found the 1963 contract unreasonable and therefore void.

We are constrained to disagree with the trial judge's conclusion that the contract was a nullity. We are satisfied that the outcome of this case is ruled by ordinary principles of partnership law. Dr. Pember was a full

partner to whom had been delegated the role as managing partner. He had, without exception, been the only partner to enter into negotiations or to contract with John Hall. It was not unusual for Dr. Pember to enter into a contract with Hall at a time considerably in advance of the expiration of the then-existing contract. In fact, that is the way the prior employment contracts were always entered into. It was apparent that Dr. Pember felt that the financial success of the pharmacy was the result of John R. Hall's good management of the business. While there is some evidence in the record which would tend to indicate that the other partners were dissatisfied with the arrangements between Dr. Pember and Hall, this dissatisfaction was not voiced to Dr. Pember and no effort was made at any time to limit his authority in respect to the further hiring of Hall.

The execution of the contract comports with the historical practices consistently followed by the partnership and, as found by the trial judge, the authority of Dr. Pember was actual authority. That being the case, the respondents' discussion of the rules applying to apparent authority is immaterial.

The trial judge and the respondents make much of the fact that the agreement was unreasonable in that a disproportionate share of the gross receipts went to Hall and his salary increased markedly in comparison with the other pharmacists employed.

We are not convinced from the record that the arrangement was unreasonable. It is certainly not within the prerogative of a court to set aside a business agreement for that reason alone, even if it were to unduly favor one party—and we are not satisfied that this is the case here —when the contract has been entered into with full authorization and without even an intimation of fraud. We see no relevancy in the fact that Hall's salary as the manager was two and one-half times that of other full-

time-employed pharmacists. If any unreasonableness exists in this entire transaction, it would appear that the other partners, if they were dissatisfied with Dr. Pember's actions, were unreasonable in not timely withdrawing Dr. Pember's authority to act as the managing partner. This was never done.

Considerable reliance is placed by the trial court upon the case of *Warren v. Mosher* (1926), 31 Ariz. 33, 250 Pac. 354, 49 A. L. R. 1311. While we have no quarrel with the law of that case, its application is inappropriate to the one before us. In that case, a partner in the firm authorized substantial bonuses to his in-laws and two other employees of the firm. The court stated that the other partner had felt this was "a policy of unjustified nepotism." She protested "in the strongest possible manner" and specifically disapproved of the payment of bonuses. That position was persistently and consistently voiced. The Arizona court affirmed the finding and judgment voiding the bonus contracts and pointed out that a contracting partner does not have the same liberty in disposing of partnership property as he would with his own and an agreement which he makes "must be a reasonable one, and such as would be considered by the ordinary businessman to be natural and proper and within the scope of the business involved."

In the instant case the contract was the usual one and, unlike the situation in *Mosher,* no protest in reference to the preceding contracts was communicated to Dr. Pember. The 1963 agreement was identical to the 1957 agreement, and the 1957 agreement comported with the 1955 agreement except that the guaranteed salary was reduced by $10 per week.

The rule of law upon which the respondents would rely is appropriate, however, under some circumstances. That rule was relied upon by this court in *Remington v. Eastern Railway Co.* (1901), 109 Wis. 154, 84 N. W. 898,

85 N. W. 321. In that case an attorney by the name of Murphy had performed work for the Eastern Railway Company. The amount due for the work performed was found to be of a value of $2,262.50. Murphy entered into an agreement with the railway company whereby he released his law partnership's claim for payment of the legal services in exchange for an employment agreement whereby the railroad agreed to personally pay Murphy $200 a month thereafter in settlement of the claim. Murphy's partner, Remington, brought an action to set aside the partnership contract on the ground of fraud. The court therein concluded that the law firm was not bound by Murphy's agreement, because Murphy surrendered the rights of the partnership for a benefit *moving exclusively to himself* and not for the general benefit of the firm. It was pointed out that Murphy could have terminated the partnership at will and reaped the benefit of the bargain and his partner would have been defrauded of his share of the fees. It was held, in those circumstances, that the agreement was unreasonable and that the other partner was not bound by the settlement. In effect, Murphy was dealing with a claim of the partnership for his own benefit. The agreement was clearly unreasonable, because with a terminable partnership, the other partner had no right to collect the sum that was found to be due for the services rendered.

In the instant case, Dr. Pember did not benefit personally by the contract with John R. Hall any more than the other partners would benefit. There is ample testimony, substantially undisputed, that it was Hall's business acumen that resulted in the prosperity of the pharmacy. No rights of the remaining partners were foreclosed by the 1963 agreement to the benefit of Dr. Pember. The contract sought to insure the continued application of Hall's talents for the purpose of continuing the success of the pharmacy. Dr. Pember had unrestricted authority to enter into the contract. He did precisely

what he had done before. In view of the past history of the entire course of dealings of the Reliable Pharmacy what he did was eminently reasonable. If, in the business judgment of the other partners, the contracts entered into in the past were unreasonable, either in respect to their terms or the mode of contracting, they could have manifested their displeasure and specifically withdrawn the authority of Dr. Pember to make further contracts. Had such notice been given, the contract entered into would have been without actual authority and, under some circumstances, could have been declared void. Such circumstances do not arise here. Dr. Pember dealt with the contractual rights of Reliable Pharmacy as he had in the past, and his conduct was within the scope of the authority that had been given him.

The briefs of the respondents make much of the issue that there was no lease agreement executed contemporaneously with Dr. Pember's contract with Hall in 1963. It should be pointed out that, at or about the time the 1963 agreement was entered into, Dr. Pember was specifically advised not to renew the lease. All that can really be gleaned from the record is that the business future of the pharmacy and its relationship with the clinic itself were somewhat uncertain, but we see nothing in the record that indicates that either the execution of a lease at that time or a decision not to execute a further lease would necessarily affect the patent authority of Dr. Pember to execute the employment agreement. It was within the authority of Dr. Pember to execute the employment agreement and the partnership was bound by it.

We do not in this appeal consider the question of whether there was a subsequent breach of the contract or whether John R. Hall is entitled to damages for an unlawful discharge. The determination of those questions must abide further proceedings in the case.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.