JOHN A. DeRAISMES v. HENRIETTA DeRAISMES.

Argued June 3, 1903—Decided November 9, 1903.

1. Under section 10 of the statute of limitations requiring that an acknowledgment or promise to defeat the operation of the statute must be in writing, signed by the party chargeable thereby, an acknowledgment or promise signed by a duly-authorized agent of the debtor is not sufficient to take the case out of the statute.

2. In case of an interest-bearing promissory note, payable on de-
mand, the time when the statute of limitations begins to run in
favor of the maker is to be computed from the making of the
note. (*Larason* v. *Lambert*, 7 *Halst.* 247, followed.)

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON,
HENDRICKSON and PITNEY.

For the plaintiff, *William R. Barricklo.*

For the defendant, *Frank B. Colton.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The plaintiff brought this
action to recover the amount due on an interest-bearing
promissory note, made by the defendant, dated May 22d,
1896, for the sum of $2,500, and payable to the order of the
plaintiff, on demand. The action was begun in June, 1902,
more than six years after the date of the note. The de-
fendant pleaded *non assumpsit infra sex annos.* At the
trial the plaintiff attempted to overcome the defence of the
statute of limitations by showing a promise to pay the
amount due on the note, made by the defendant less than
six years before the suit was begun. To prove this promise
two letters were produced and offered in evidence, written by
the defendant's son, one dated December 4th, 1898, and
the other May 29th, 1901, in each of which there was an
acknowledgment that the note had not been paid and a
promise that the defendant would pay it as soon as she was
financially able to do so. Each of these letters also con-
tained a statement that it was written at the request of the
defendant. To overcome this evidence the defendant's son
was examined, and testified that his mother had never au-
thorized him to make these acknowledgments and promises
for her. The court thereupon charged the jury that if they
believed the acknowledgment of the debt and the promise

to pay it contained in these letters were written by the direction of the defendant, their verdict should be for the plaintiff.

The jury so found.

The tenth section of the statute of limitations (*Gen. Stat., p.* 1976) provides that "in actions of debt or on the case, grounded on any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, whereby to take any case out of the operation of this act or to deprive any person of the benefit thereof, unless such acknowledgment or promise shall be made or continued by, or in some writing to be signed by, the party chargeable thereby." It is an exact transcript of the first section of the English statute of 9 *Geo. IV., c.* 14, passed in the year 1828, and commonly known as Lord Tenterden's act. By the construction put by the English courts upon the words "signed by the party chargeable thereby," an acknowledgment or promise signed by a duly-authorized agent of the debtor was held not sufficient to take the case out of the statute. *Hyde* v. *Johnson,* 2 *Bing. N. C.* 776; *Clark* v. *Alexander,* 8 *Scott N. R.* 147. In the case first cited, Chief Justice Tindal, after pointing out that the legislature had in many prior statutes, particularly in various sections of the statute of frauds, given equal efficacy to written instruments when signed by the parties, and when signed by their agents, says: "It appears, therefore, that the legislature well knew how to express the distinction between a signature by the party and a signature by his agent. When, therefore, we find in the statute now under consideration that it expressly mentions the signature by the party only, we think it a safer construction to adhere to the precise words of the statute, and that we should be legislating, not interpreting, if we extended its operation to writings signed, not by the party chargeable thereby, but by his agent."

The reasoning of the learned Chief Justice seems convincing. But even if the meaning of the phrase itself was

not clear, the construction which should be given to it in our statute is free from doubt. It became a part of that statute at the time of its revision, in 1874, many years after the decision of Hyde v. Johnson and of Clark v. Alexander, and the rule is entirely settled that where a statutory provision of doubtful import has been adopted from the statute of another state or country, after it has received judicial construction in that jurisdiction, it will be presumed that the interpretation adopted in the state or country from which it is taken has been accepted, as well as the words. *Fritts v. Kuhl*, 22 *Vroom* 191; *Anderson* v. *Camden*, 29 *Id.* 519; *Lessee of Gray* v. *Askew*, 3 *Ohio* 466; *Langdon* v. *Applegate*, 5 *Ind.* 327; *Rigg* v. *Wilton*, 13 *Ill.* 15; *Adams* v. *Field*, 21 *Vt.* 256; *Rutland* v. *Mendon*, 1 *Pick.* 154; *People* v. *Coleman*, 4 *Cal.* 48. The justice of such a presumption is peculiarly free from doubt in its application to this particular statutory provision. The first section of Lord Tenterden's act, after having been judicially declared, by the cases above cited, not to apply to a writing signed by the agent of the party chargeable thereby, was, in 1856, amended by the English parliament so as to read "signed by the party chargeable thereby, or by his agent duly authorized." See *Mercantile Law Amendment Act*, 19 and 20 *Vict., c.* 97. Eighteen years later our legislature, with that fact before them, adopted into our act for the limitation of actions this provision as it originally appeared in the English statute, without the amendment.

The evidence offered by the plaintiff for the purpose of taking the case out of the operation of the statute not being efficacious to accomplish that result, a verdict should have been directed for the defendant.

We have not overlooked the contention of the plaintiff that as the note sued upon bore interest, it did not become due until actual demand made, but we consider it without merit. It was decided by this court, as early as 1831, in *Larason* v. *Lambert*, 7 *Halst.* 247, that in the case of a promissory note payable on demand, the time when the

statute of limitations began to run against the maker should be computed from the making of the note, and the correctness of that decision has never been questioned. In that case the note did not draw interest, but the rule is the same whether the note draws interest or not. *Ang. Lim.,* § 95, and cases cited. Counsel refers us to *Merritt* v. *Todd,* 23 *N. Y.* 28, in support of his contention. But that case merely decides that, *as between holder and endorser,* a demand note which bears interest does not become due until demand is actually made, and has no application to the rights of the holder as against the maker. It is so declared in the later case of *Wheeler* v. *Warner,* 47 *Id.* 519, where it was expressly ruled that "a promissory note, payable on demand, whether with or without interest, is due forthwith, and an action thereon is barred *against the maker* by the statute of limitations if not brought within six years after its date."

But even if this contention on the part of the plaintiff was sound, it would not now avail him. The case was tried upon the theory that the note was outlawed, unless it was taken out of the operation of the statute by the new promise contained in the letters, and the plaintiff's verdict cannot be sustained upon a theory of the law antagonistic to that upon which the case was tried. To do so, upon a rule to show cause, would be to deprive the defendant of his right to have the judgment of the court of last resort upon the soundness of that theory as applied to the facts of the case. *Hays* v. *Pennsylvania Railroad Co.,* 13 *Vroom* 446; *Halsey* v. *Lehigh Valley Railroad Co.,* 16 *Id.* 26; *Sensfelder* v. *Stokes,* 40 *Id.* 86.

The rule to show cause should be made absolute.