W. ORVAL WALLIS,

*Plaintiff and Appellant,*

vs.

FRANK C. BOSLER,

*Defendant and Respondent.*

(No. 2532; July 22nd, 1952; 246 Pac. (2d) 771)

For the plaintiff and appellant the cause was submitted upon the brief of Pence and Millett, of Laramie, Wyoming, and also oral argument of Mr. Alfred M. Pence.

For the defendant and respondent the cause was submitted upon the brief of Corthell and Hitchcock, of Laramie, Wyoming, and also oral argument of Mr. M. E. Corthell.

## OPINION

ILSLEY, Justice.

In this case the defendant and respondent demurred to the amended petition of the plaintiff and appellant on the ground that the amended petition failed to state facts sufficient to state a cause of action. The trial court sustained the demurrer and appellant refusing to plead further judgment was entered dismissing the

action, whereupon the appellant brings the case here on appeal.

In brief the first cause of action states that on February 27, 1950 the defendant was the owner and in possession of certain described lands and leases; and entered into a contract with a co-partnership consisting of E. F. Small and E. G. Jackson, doing business as Laramie Investment Company, a licensed real estate brokerage firm, to sell the deeded lands and leases as provided for in the contract. A copy of the "written appointment" is attached as Exhibit "A" to the petition. That thereafter the Laramie Investment Company sold the lands to appellant by a written contract, a copy of same being attached as Exhibit "B" to the amended petition. Appellant at the time of signing Exhibit "B" paid Eight Thousand ($8,000.00) Dollars to the Laramie Investment Company on behalf of respondent, which sum has been retained by respondent or his agent, the Laramie Investment Company. Later at a meeting at which appellant, respondent and members of the Laramie Investment Company were present, it is alleged that respondent *stated* that the terms of the contract set forth in Exhibit "B" were in all particulars satisfactory and agreeable and he approved the same, except the purchase price per acre which he wanted changed from $8.75 per acre to $9.00 per acre, to which change appellant agreed. Thereafter the parties went to the ranch and then and there determined upon the personal property to be included in the sale, which was then and there delivered to appellant by respondent.

On the first of May, 1950 the parties hereto, A. M. Pence, appellant's attorney, and M. E. Corthell, respondent's attorney, and one F. A. Wilkinson met in Mr. Corthell's office at which time and place respondent *stated* that he had made the sale as provided in Exhibit

"B", but he desired to be relieved of performing the agreement and that for a consideration satisfactory to appellant he desired to be relieved from the agreement and that same be rescinded, which request appellant refused. That at another time respondent offered $500.00 to be relieved of the performance of the agreement, which was refused. That appellant has many times requested respondent to convey the lands and comply with said agreement, but respondent refuses so to do although appellant tenders performance of said agreement and is ready, able and willing to perform his part of the agreement.

A copy of Exhibit "A" is as follows:

## "EXHIBIT A"

### Real Estate Brokers Agency Contract

To: Laramie Inv. Co.          Date: Feb. 27th, 1950

In consideration of your agreement to list in your office and to use your efforts in finding a purchaser for the property described on the reverse side hereof, we hereby grant you the Exc right for a period of 1 year from date hereof unless sooner sold, to sell said property for the sum of $10.00 to $8.00 Acre cash, or at any other price terms or exchange to which we may consent.

If you are successful in finding a purchaser for said property, or if the same is sold to anyone to whom you have shown the property, or advised it is for sale within a period of sixty days and of whom we have had notice, we agree to pay you a commission according to the schedule printed below. Exchange of property shall be considered same as a sale.

In event of such sale we will furnish abstract of title extended to date showing merchantable title in us, and agree to convey by Warranty Deed.

Commission of 5% on Sales

s/ Frank C. Bosler
Owner

(On the Back of Said Exhibit)

Owner :............................................................Frank C. Bosler
Property :
Ranch : Total Acres :
Deeded : ................................................................23 Sect.
Lease :................................................17 State and US Lease
                          7 Section Railroad
No. Irrigated Acres :
Sub-Irrigated :
House :..................................All main Set of Improvement
Buildings :................Land in Range 73 and 74 and 1 Mile
                Strip in Range 72.
Equipment :
Fence :
Water :
Hay :
Comments :

A copy of Exhibit "B" is as follows :

           "E X H I B I T   B"

Laramie Investment Company
213 Ivinson Avenue
Laramie, Wyoming.

               Laramie, Wyoming, April 8th, 1950

"Received of W. Orval Wallis the sum of Eight Thousand and no/100 Dollars, being a deposit and part payment, on account of BARGAIN AND SALE, made this day by Laramie Investment Company, as agent for Frank C. Bosler of that certain lot, piece or parcel of land situate in the County of Albany, State of Wyoming, and more particularly described as follows, to-wit: All of Land in Sections described on Reverse hereof as follows in Twp 17 N Range 73 W of 6th P. M. Said property having been this day sold to said W. Orville Wallis for the sum of Eight Dollars and 75/100 per acre. For Deeded Land Dollars, on the following terms and conditions, to-wit Eight Thousand and no/100 Dollars, in hand paid, receipt whereof is hereby acknowledged, Balance of purchase shall be handled on basis of loan at 4% with loan of appros

$6.00 per acre, payable on a 20 year basis. Difference in Loan balance, and down payment of $8,000.00 shall be paid in cash.

"Taxes: All prior years and pro-rate share on real property to be paid by present owner. Up to possession of property as of June 15th, 1950.

"Assessments: Does not apply generally.

"Insurance: Insurance to be obtained by buyer to meet needs of loan only: Real possession of real and personal property effective 6-15-50.

"Possession: Constructive possession immediately. Actual possession when Deed has been delivered.

"—30— days after delivery of Abstract of Title shall be allowed for Examination of Title.
If Title does not prove good, and cannot be made good, then this deposit to be returned to said purchaser.

This sale made subject to
approval of the owner.

LARAMIE INVESTMENT COMPANY
By F. A. Wilkinson, Agent

"I hereby agree to purchase the above described property upon the terms and conditions above set forth, and in the event of our failure to comply therewith to forfeit the deposit of Eight Thousand Dollars and no/100 Dollars as fixed and liquidated damages.

W. ORVAL WALLIS

"I hereby approve the above sale, and agree to sell the above described property upon the terms above set forth; to furnish complete Abstract of Title thereto down to date hereof, and authorize said deposit to be returned to Buyer should title finally prove defective.

"I agree to pay Laramie Investment Company the sum of 4% of Sale Price Dollars for services herein above rendered."

(On the Back of Said Exhibit)

"All and singular the following to wit: All in Range

73W of 6 PM and all in Township 17N. Section Thirteen (13) Fifteen (15) Seventeen (17) Twenty One (21) Twenty Three (23) Twenty Five (25) Twenty Seven (27) Thirty Three (33) and Thirty Five (35) and Deeded land in Section Nineteen (19) and Deeded Land in Twenty Nine East of US 30 (29). And all if any other deeded land in 17 N Range 73W South of that land bought by Krueger from Frank C. Bosler.

"And all rights & privileges on leased land in following To Wit In Twp 17N and Range 73W of 6 P.M. Section Fourteen (14) Section Sixteen (16), Section Twenty (20) Section Twenty Two (22), Twenty Four (24) Section Twenty Eight (28) and Thirty Four (34) and Thirty Six (36) Section Twenty Six (26), and Leased land Rights and Priviledges in Township 17 N Range 73 W of 6th P.M. If Located South of Kruegers Land, IE: Land that Krueger that was bought from Frank C. Bosler.

"and all improvements, appurtenances, and hereditaments situate thereon or appertaining there to including Water rights, All other personal ranch property owned by Frank C. Bosler, and ½ of all mineral rights that Frank C. Bosler might own. In 17N 73W of 6 P.M."

There is a second cause of action wherein appellant seeks several thousand dollars in damages for removal of buildings for waste committed by respondent, and loss of the use of pasture by appellant and the appellant prays judgment for specific performance of the contract in the first cause of action; a prayer for $28,694.69 damages upon the second cause of action; that in the alternative appellant have judgment in the sum of $36,480.00 damages as and for respondent's breach of the sales agreement, Exhibit "B".

It is clear that the sales contract set out in the amended petition was signed by Laramie Investment Company, claiming to be agent for the respondent. It was not signed by the respondent and it is contended by him that it was void under the Wyoming Statute of

Frauds. On the other hand, appellant asserts that the contract having been signed by respondent's agent and the same having been ratified orally by the respondent, that such action satisfies the Statute of Frauds and the sales contract is binding.

Is it possible, under the Wyoming Statute of Frauds, for an agent to sign such an agreement, or must it always be signed by the owner, or party to be charged?

The Wyoming Statute of Frauds set forth in Sec. 5, 101 Wyo. Comp. Stat. 1945 provides that: "In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and *subscribed by the party to be charged therewith*: * * *

Fifth: Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year * * *."

In this form, and without change, the Wyoming Statute of Frauds has been a part of Wyoming law since 1871, insofar as the sale of real estate is concerned.

In 1917 the Uniform Sales Act was passed having to do with the sale of goods. This Act provided among other things that, "* * * some note of memorandum in writing of the contract of sale be signed by the party to be charged or *his agent in that behalf*." Sec. 41-104 W.C.S. 1945.

There seems to be a great dissimilarity as to the Wyoming Statute of Frauds and those of other states, which in some cases provide that the writing must be signed, "by the party to be charged, or his duly authorized agent." In others, "by the party to be charged or his agent duly authorized in writing." Still others, by "the party to be charged therewith, or some other persons thereunto by him lawfully authorized."

The Wyoming Statute of Frauds, so far as we have been able to find, is the only statute covering the various transactions mentioned therein which required in all cases that the agreement must be "subscribed by the party to be charged therewith."

Counsel for appellant urges upon us that the phrase "subscribed by the party to be charged therewith" should be construed to mean the same as though the statute read that it was to be signed by the party to be charged, or his authorized agent. Counsel states the well-known maxim in agency that he who acts through another acts for himself (qui facit per alium facit per se), in support thereof. What does this phrase, "subscribed by the party to be charged therewith," mean?

We pause to comment upon the briefs submitted by both counsel for the appellant and the respondent. They are indeed excellent. We find every point in controversy carefully analyzed, ably and exhaustively treated. We desire to commend counsel most heartily. Had the appellant, the respondent and the real estate agents herein, selected any one of these excellent lawyers now representing them to draw the contract for the sale of the real estate herein, instead of attempting to do so themselves, they would have saved themselves many dollars, much time, trouble and travail.

This court discussed, in Lawer vs. Kline 39 Wyo. 285, 270 P. 1077, under the same statute referred to here, the question whether a writing is enforceable by an agent rather than by the "party to be charged." While the case was decided upon the proposition that the signature of one partner was the signature of the partnership, the principle involved is comparable to the holding in Nevada Bank of San Francisco vs. Portland National Bank, 59 Fed. 338-342, cited by counsel for appellant.

"It is contended that action upon these representations is barred by the statute of frauds. Section 786, p. 594, 1 Hill's Code, provides as follows:

" 'No evidence is admissible to charge a person upon representation as to the credit, skill or character of a third party unless such representation or a memorandum thereof be in writing and either subscribed by or in the handwriting of the party to be charged.' "

"This provision of the statute is, in substance, a reproduction of Lord Tenterden's Act (9 Geo. IV, c 14, § 6). The same or a similar statute has been adopted in several of the states, but it is believed that the provision therein expressed that the representation must be subscribed by the "party to be charged" is found only in the law of Virginia, West Virginia, Kentucky, Alabama, and Oregon. In England, Lord Tenterden's Act has been construed to mean that the representation must be signed by the party himself, and may not be signed by an agent. Hyde v. Johnson, 3 Scott 289; Clark v. Alexander, 8 Scott, N.R. 147; Williams v. Mason, 28 Law T. (N.S.) 232. The same construction is doubtless applicable to the Oregon statute."

It was the holding in this case that the signature of the cashier was that of the bank. Counsel cites this case as sustaining his contention but we are of the opinion that the discussion and reasoning sustain the position of the respondent.

It is generally held that the agent may sign to satisfy the Statute of Frauds where the Statute contains the phrase "signed by the party to be charged or his authorized agent." See 49 Am. Jur. 715 Sec. 412; Vol. II Williston on Contracts (Rev. Ed.) Sec. 489.

However, it is stated in 37 C.J.S. 703 Sec. 209:

"Under the terms of the statute of frauds, as generally worded, the memorandum may be signed by the duly authorized agent of a party to be charged. In a few jurisdictions the statutes which relate specifically to representations as to the credit of another require a writing signed by the "party to be charged" and do not

contain any alternative provision for signing by an agent. The courts give effect to the express terms of such statutes by construing them to require a personal signature and not to authorize a signing by an agent." (Citing Nevada Bank v. Portland Nat. Bank 59 F. 338 discussed supra. See also 27 C.J. 292, note 60.)

"In other jurisdictions, however, statutes relating to a sale of goods, wares, and merchandise, which do not expressly authorize signing by an agent, are deemed to be satisfied by a signing by a duly authorized agent of the party to be charged."

Citing Fordyce v. Seaver 74 Ark. 395, 85 S.W. 1126, 4 Ann. Cas. 892.

In the Fordyce case supra the statute under consideration by the Arkansas court was exactly like the Wyoming statute. In that case the court held that when the contract was signed by an agent who was duly authorized the statute was satisfied, even though the Arkansas statute read: "No contract for the sale of goods, wares and merchandise, for the price of thirty dollars and upwards shall be binding on the parties unless, * * * there be some note or memorandum, *signed by the party to be charged.*" The court discussed the Lord Tenterden Act and the case of Wiener v. Whipple, 53 Wis. 298, 10 N.W. 433, citing the later case as its main authority after stating that the Wisconsin statute was "exactly like the Arkansas statutes." The Arkansas court said: "The signature of the agent in such case is deemed the signature of the principal, and is a sufficient signing to take the case out of the statute." 85 S.W. 1126. Citing Wiener v. Whipple 10 N.W. 433, we do not think that the case is in point because Section 2327 of the Wisconsin statute which was evidently overlooked by the Arkansas court provided with respect to the statute of frauds: "Every instrument required under *any of the provisions* of this title to be subscribed by any party, may be subscribed by the

agent of such party lawfully authorized thereto."
Browne on the Statute of Frauds, page 632.

The case of De Raismes vs. De Raismes 70 N.J.L.
15, 56 Atl. 170, was a suit brought to recover on a note
after it was barred by the Statute of Limitations, which
was an exact copy of Lord Tenterden's Act and similar
in wording to that of the Wyoming Statute. The New
Jersey Statute required that: "In actions of debt * * *
no * * * promise by words only shall be deemed suffi-
cient evidence of a new and continuing contract * * *
unless such * * * promise shall be made * * * in writing
to be signed by the party chargeable thereby."

Evidence was offered by the plaintiff to overcome
the statute of limitations in the form of two letters
written by defendant's son in each of which was a
statement that it was written at defendant's request,
with a promise to pay. On trial the son testified that
the defendant had never authorized him to make the
promise for the defendant. The New Jersey court held
that the letters did not overcome the statute of limita-
tions, but required that an acknowledgment to defeat
the same must be in writing, signed by the *party
chargeable thereby*. That a written promise to pay a
note by an agent of the person bound thereby is insuffi-
cient. The New Jersey court discussed Lord Tenter-
den's Act, and the English cases construing that Act,
and found the reasoning therein convincing. See also
In re Sleezers Estate 209 Ia. 56-61, 227 N.W. 644; King
vs. Knudson 209 Ia. 1214-1217, 229 N.W. 839.

We cannot overlook the holding and the reasoning in
the English cases. In England, in 1828, an act was
passed, which is found in the statutes at large 9 Geo.
43 c. 14, commonly called Lord Tenterden's Act. The
courts of England have been called upon on several oc-
casions to interpret the phrase, *"Party to be charged."*
Section One, of Lord Teuterden's Act provides, "in

actions of debt * * * any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new * * * contract, whereby to take any case out of the operation of this Act * * * unless such acknowledgment or promise shall be made * * * in some writing to be signed by the *party to be chargeable thereby."* This is the section stated in De Raismes vs. De Raismes supra, to be an exact copy of the New Jersey statute. In Whippy v. Hilary 3 B. & A.D. 399, 110 Eng. Reprint 144 (1832) this section was construed. The court said: The words of the Act are, "unless such acknowledgment or promise shall be made or contained by or in some writing to be signed by the *party to be chargeable thereby.* The defendant himself must be chargeable by the instrument relied upon to bar the statute. That was not so here." The writing was by some one else and it was held insufficient. Again in Hyde vs. Johnson 2 Bing. (N.C.) 776, 132 English Reprint 299 (1836), in discussing the same section of the statute and comparing it with other sections of the statute, where such words as, "signed by the party," or, "their agents thereunto lawfully authorized by writing," were used, the court said: "It appears therefore that the legislature well knew how to express the distinction between a signature by the party and a signature by his agent. * * * when, therefore, we find the statute now under consideration that it expressly mentions the signature of the party only, we think it a safer construction to adhere to the precise words of the statute, and that we should be legislating, not interpreting, if we extended its operation to writings signed not by the party chargeable thereby but by his agent."

Section 6 of Lord Tenterden's Act provided, "no action shall be brought whereby to charge any person upon any representation made concerning the credit, ability, trade, or dealing of any other person to the intent that such other person may obtain credit, money

or goods, unless such representation be made in writing and signed by the *party to be charged therewith."* This section 6 was construed in Swift vs. Jewsbury 9, L.R.Q.B. 301-312 (1874). It was quite evident that two things were required under this section. First, that the representation shall be in writing and, second, that it also shall be signed by the "party to be charged." Because in that case Lord Coleridge C.J. said:

"If you mean to charge a person with fraudulent act whereby you have been damnified in respect of the conduct of another, you shall not charge that person unless you can produce his own handwriting for the statement of fraud by which you say you have been misled. Whether, therefore, one looks to the antecedent reason of the thing or whether one looks to what may be called parliamentary exposition of the statute, upon both grounds it seems to me that the true construction is the one which has been contended for by Mr. Benjamin, namely, if you want to charge a person under s. 6, 9 Geo. 4, c. 14, you must produce the document upon which you propose to charge him, signed by the hand of the person whom you seek to charge." And in the same case Bramwell B, page 316, stated: "In my opinion the effect of the statute is this, that a man should not be liable for a fraudulent representation as to another person's means unless he puts it down in writing, and acknowledges his responsibility for it by his own signature. He is neither to have the words proved by word of mouth nor the authority given to an agent for whose act it is sought to make him responsible proved by word of mouth."

To the same effect is the holding in Williams v. Mason 28 L.T.R. (N.S.) 233, (1873) where the court said: "It may very well be, and ought to be, that where a person is charged with fraud, his own signature would be necessary to charge him." Swift v. Jewsbury supra, was approved and the same meaning given to the term, "signed by the party to be charged therewith," in Hirst v. Banking Co. 2 K.B. 560 (1901),

Clark v. Alexander 8 Scott N.R. 147 (1844), 13 L.J.R. 133.

We have in mind that: "The Statute of Frauds was enacted to prevent fraud, not to aid it, and should receive a reasonable interpretation with that end in view. The great majority of courts have always endeavored to keep that principle uppermost in rendering their decisions." Mead vs. Leo Sheep Co. 32 Wyo. 313, 327; 232 P. 511.

We also think that when the Wyoming Territorial Legislature met in 1871, and enacted into law the Statute of Frauds here under discussion (Sec. 5-101 W.C.S. 1945) that it was an intelligent assembly. It no doubt had in mind that Wyoming was a place of wide open spaces, sparsely settled and for the most part with poor communications. It is reasonable to assume that those early lawmakers, when confronted with the enactment of a statute for the prevention of fraud, considered that they would rather have their constituents deal directly with a principal than with an agent. That they knew of the various laws in other states with respect to the Statute of Frauds, as well as the law and the decisions of the courts in England. Otherwise why use similar wording to that used in Lord Tenterden's Act? The Wyoming Statute as originally enacted made no provision for the signing by an agent. Section One of the English Act was amended in 1856 so as to read: "Signed by the party chargeable thereby, or by his agent duly authorized." This was some fifteen years before the enactment of the Wyoming Statute of Frauds, so the Wyoming legislature had available, not only the original Statute of Frauds, but the amendment to it. As successive Wyoming legislatures met they must have been aware that there were many statutes of fraud in other states which required that the transactions mentioned therein would be

void unless signed by the party to be charged or their agent, or their agent duly authorized. Williston on Contracts (Rev. Ed. Sec. 489, n. 2). See annotation on the necessity of written authority to enable agent to make contract within Statute of Frauds 27 A.L.R. 606 to 610 incl. An analysis of these authorities shows that Mr. Williston lists some twenty-two states wherein the statute of frauds provides that the transactions therein mentioned, in order to be valid, must be signed by the party to be charged or his agent duly authorized in writing. In some five or six of these states where the statutes originally had not required the agents to be authorized in writing, were at a later time changed to so require.

Now, during all of these years from 1871 until 1917, when the Uniform Sales Act was passed, there was no change in the Wyoming Statute of Frauds and then only with respect to the sale of goods, Sec. 41-104 W.C.S. 1945. Evidently the Wyoming Legislature was fearful of giving to an agent authority to sign in the first instance, and the Legislatures meeting at later times desired to retain the Wyoming Statute of Frauds as originally passed in 1871, with respect to the sale of real estate.

We do not believe that Sec. 5-101 W.C.S. 1945 is an ambiguous statute of doubtful meaning. We think the phrase "Subscribed by the party to be charged therewith," means exactly what it says. As this court has said: "If the language is plain and unambiguous there is no room left for construction." Rasmussen vs. Baker 7 Wyo. 117-128, 50 P. 819.

In any event the Wyoming Legislature adopted the language "Party to be charged" many years after that language had been judicially interpreted in England, as above set forth. As said in De Raismes vs. De Raismes, supra, "The rule is entirely settled that, where a statu-

tory provision of doubtful import has been adopted from the statute of another state or country after it has received judicial construction in that jurisdiction, it will be presumed that the interpretation adopted in the state or country from which it is taken has been accepted, as well as the words." Citing Fritts v. Kuhl, 51 N.J. Law 199, 17 Atl. 102; Anderson vs. Camden, 58 N.J. Law 519, 33 Atl. 846; Lessee of Gray vs. Askew 3 Ohio 466; Langdon vs. Applegate 5 Ind. 327; Rigg vs. Wilton 13 Ill. 15, 54 Am. Dec. 419; Adams vs. Field 21 Vt. 256; People vs. Coleman 4 Cal. 48, 60 Am. Dec. 581.

The Wyoming Statute of Frauds, insofar as we have been able to find is the only statute covering the various transactions mentioned, which requires in all cases that the agreement must be signed by the party to be charged. A strict construction thereof might mean that in no case could authority be given in writing to another. We are of the opinion that such a construction would be too strict. As we view it, the statute means that "the party to be charged" *must sign*. We think that this requirement would be satisfied if the party to be charged were to authorize another in writing to sign. The giving to another parol authority, or an oral ratification, would not be sufficient.

Such a ruling would place our statute on an equal footing with those statutes which specifically provide that the contract must be signed by the party to be charged or by his authorized agent in writing. We do not believe, as has been suggested, that such a ruling by this court would interrupt or interfere with the free flow of business transacted under contracts required to be in writing. Powers of attorney under the laws of Wyoming would still be recognized and our holding here would in no way change the law with respect to part performance of a contract by a principal as

ground for removing the same from the Statute of Frauds.

For the reasons herein set forth we think the trial court was correct in sustaining the demurrer to the amended petition.

Counsel for respondent have devoted considerable space in their brief to a second point raised by their demurrer. They argue that both Exhibit "A" and Exhibit "B" above set forth are so indefinite, uncertain as to terms and description that they do not constitute a contract that can be enforced by an order for specific performance.

Because we have already ruled on the principal question raised by the demurrer, namely that the statute of Frauds is a defense to the action, we deem it unnecessary to pass upon this second point. However, we wish to say in passing that this court has discussed the principles of law raised by this second point in the following cases; Freeburgh vs. Lamoureux 15 Wyo. 22, 85 P. 1054; Burley-Winter Pottery Co. vs. Onken Bros. & West Co. 26 Wyo. 287, 183 P. 747; Noland vs. Haywood 46 Wyo. 101, 23 P. (2d) 845. We reaffirm and adhere to all that has been said in these cases. We state that nothing said by us here shall be construed in any way as changing or modifying that which has been said by this court in the above cited cases.

*Affirmed.*

BLUME, C. J., RINER, J., concur.