Jewell **TURNER** and Cyrus O. Turner,
Appellants,

v.

**J. V. BROOKSHEAR**, Elmer Graham, and
Vance Foster, Appellees.

No. 6130.

United States Court of Appeals
Tenth Circuit.

Oct. 8, 1959.

Rehearing Denied Nov. 4, 1959.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., were with him on the brief), for appellants.

Funston Flanagan, Walters, Okl. (Walter Hubbell, Walters, Okl., was with him on the brief), for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Turners[1] brought this action against Brookshear, Graham and Foster[2] to reform a mineral deed on the ground of mutual mistake.

On June 14, 1937, plaintiffs executed and delivered to Magnolia Petroleum Company an oil and gas lease of the E ½ of the NW ¼ of the SW ¼ and the SW ¼ of the SW ¼ of S 11, T 2 S, R 5 W, Stephens County, Oklahoma, containing 60 acres. The lease provided it should remain in force for a primary term of 10 years "and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of them is or can be produced." It was duly recorded on July 8, 1937. The lease contained the following provision:

"10. If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks. * * * If at any time there be as many as four parties entitled to rentals or royalties, lessee may withhold payments thereof unless and until all parties designate, in writing, in a recordable instrument to be filed with the lessee, a common agent to receive all payments due hereunder, and to execute division and transfer orders on behalf of said parties, and their respective successors in title."

On October 25, 1946, Magnolia executed and delivered to Jack Cohen an assignment of such lease, by which it transferred its interest in the lease, "in so far and only in so far as said lease covers the Southwest Quarter (SW ¼) of the Southwest Quarter (SW ¼) of Section 11, Township 2 South, Range 5 West, Stephens County, Oklahoma, down to a depth of 1200 feet below the surface thereof." The assignment was duly recorded on October 29, 1946. The portion of the leased premises covered by the assignment will hereinafter be referred to as the 40-acre tract.

On August 24, 1951, plaintiffs executed and delivered to Brookshear a mineral deed. After such deed was delivered to Brookshear, the names of Graham and Foster were inserted as grantees. The granting clause of the deed after the in-

---

1. Hereinafter called plaintiffs.

2. Hereinafter called defendants.

sertion of the two additional grantees read as follows:

" * * * do hereby grant, bargain, sell, convey, transfer, assign and deliver unto J. V. Brookshear, Elmer Graham and Vance Foster of Burkburnett, Texas, hereinafter called Grantee (whether one or more) an undivided One-Half (½) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Stephens County, State of Oklahoma, to-wit: The East half of the Northwest Quarter of the Southwest Quarter of Section Eleven (11), Township Two (2), South, Range Five (5) West, containing twenty (20) acres, more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas, and other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said land all of Grantee's property and improvements."

Such deed contained the following additional provisions:

"This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed; it being understood and agreed that said Grantee shall have, receive, and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after date hereof, precisely as if the Grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands described and Grantee one of the lessors therein."

The deed was recorded February 9, 1957. The portion of the leased premises covered by the specific description in the deed will hereinafter be referred to as the 20-acre tract.

Within the primary term of the lease Cohen drilled a producing oil and gas well on the 40-acre tract embraced in his assignment and after the primary term he drilled five additional producing wells on such 40-acre tract and such wells were producing oil in paying quantities at the time of the trial of this action in the lower court. Mr. Turner testified at the trial below that a producing well was drilled on the 20-acre tract in 1953 and that he received all of the royalties under the oil and gas lease from the production from both the 40-acre tract and the 20-acre tract until February, 1957.

Since the recording of the mineral deed, the purchasers of the oil have withheld payment of royalties on the production from both the 20-acre tract and the 40-acre tract.

In their complaint plaintiffs alleged that it was intended by the parties to the mineral deed that the grantees should receive only an undivided one-half interest in the oil, gas and minerals actually produced from the 20-acre tract and that the grantees should receive nothing by reason of production from the 40-acre tract and that due to mutual mistake the provisions of the mineral deed were drawn so that they could be interpreted "to include an undivided interest in the oil and gas lease on the 60 acres, regardless of what portion of the 60 acres actually produced oil."

Plaintiffs prayed that the mineral deed be reformed so as to conform to the alleged intent of the parties thereto.

In their answer the defendants denied the alleged mutual mistake and alleged that by virtue of the mineral deed and the oil and gas lease, they were entitled to an undivided one-sixth interest in the royalties payable under such lease, from all the oil produced from the entire 60 acres, and prayed for equitable relief.

The trial court first entered a decree adjudging that the plaintiffs were the owners of the oil, gas and minerals un-

**764**

derlying the 40-acre tract and quieting their title thereto as against all demands of the defendants and adjudging that the plaintiffs and the defendants each owned an undivided one-half interest in the minerals underlying the 20-acre tract. Thereafter, the court granted a motion for a new trial and entered new findings of fact and conclusions of law, in which he found the facts substantially as above stated and further found that at the time of the execution and delivery of the mineral deed "the plaintiffs thought they were selling an interest only in the 20 acres described in the deed, and the defendant thought he was acquiring an interest only in the 20 acres," and "that neither party took into consideration the provision in the mineral deed itself or the provision in the Magnolia Petroleum Company lease."

However, the court concluded that Magnolia and Cohen were indispensable parties and for that reason dismissed the action without prejudice. The plaintiffs have appealed.

■ Prior to the adoption of Rule 19(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., it was well settled that an indispensable party is one who has such an interest in the subject matter of the controversy that a final decree cannot be rendered between the other parties to the suit without affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.[3] Rule 19(a) did not change the former rule. The Third Circuit has expressly so held.[4] This Circuit and the United States Supreme Court have so held by implication, by recognizing and applying the old rule since the adoption of Rule 19(a).[5]

■ Here, the plaintiffs had actual knowledge, or were charged with actual knowledge, of the terms and provisions of the oil and gas lease, and, particularly, the provisions in paragraph numbered 10 thereof, set out above. Prior to the execution and delivery of the mineral deed, the oil and gas lease and the assignment of a portion thereof to Cohen had been duly recorded and the defendants either had actual knowledge, or were charged with constructive knowledge of the terms and provisions of the oil and gas lease. At the time the mineral deed was executed and delivered, the oil and gas lease was in full force and effect and the estate granted by the plaintiffs and to the defendants in the mineral deed was limited by and subject to the oil and gas lease and the terms and provisions thereof. Neither the plaintiffs nor the defendants by such mineral deed could change the rights, duties and obligations of the lessee and its assignee under the lease. Under the terms of the lease, the lessee and its assignee had the right and were under an obligation to develop and operate the leased premises as a unit under a single lease; to treat all royalties accruing thereunder as an entirety, and to divide such royalties among and to pay such royalties to the separate owners of the leased premises in the proportion that the acreage owned by each bore to the entire leased acreage.

In the case of Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864, 865, Clark, the owner of a 160-acre tract of land, executed and delivered an oil and gas lease thereof to one Templeman, who assigned it in turn to Gypsy. The lease reserved a one-eighth royalty. It contained the following provision:

"If the leased premises are hereafter owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as an entirety, and royalties shall be paid to each separate owner in

3. Franz v. Buder, 8 Cir., 11 F.2d 854, 856, 857 and cases there cited.

4. Chidester v. City of Newark, 3 Cir., 162 F.2d 598, 600.

5. Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, 458; Skelly Oil Co.

v. Wickham, 10 Cir., 202 F.2d 442, 446; Carter Oil Co. v. Crude Oil Co., 10 Cir., 201 F.2d 547, 549; Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 52, 75 S.Ct. 151, 99 L.Ed. 59.

the proportion that the acreage owned by him bears to the entire leased acreage, * * *."

Thereafter, Clark executed a mineral deed to Schonwald, which purported to convey to the latter a one-fourth interest in the grantor's right to the oil and gas and other minerals in and under the west one-half of the 160-acre tract. Gypsy developed the 160-acre tract and discovered and produced large quantities of oil and gas therefrom. The wells drilled on the west one-half of the 160-acre tract were much more productive of oil than the wells drilled on the east one-half. Schonwald brought the action, undertaking to reform the deed on the grounds of fraud and mistake, and thereby void the application of the provision of the lease above quoted to the oil, gas and other minerals under the west one-half of the 160-acre tract conveyed to him by the mineral deed. In the opinion the court said:

"* * * If in fact the mineral deed could be reformed on the ground of mutual mistake, so as to make it conform to what the plaintiffs contend was the purpose and intention of Clark and Schonwald, the question would then arise as to whether it could be effective as against the lessee in the face of this clause in the lease. If there were a mistake, it was a mistake between Clark and Schonwald. Plaintiffs apparently realize that if such reformation were had as to the mineral deed, it would doubtless be unavailing, unless the clause in question were held not to be binding upon subsequent purchasers from Clark even with constructive notice of all the terms and provisions of the recorded lease. * * * Even if the so-called mineral deed should be reformed for any grounds so as to show a conveyance to Schonwald of a fractional part of the royalty on the west 80 only, such attempt on the part of Clark would not be availing, if in fact the said pro rata clause of said lease is a valid burden imposed upon the interest in the property retained by Clark after the execution of the lease. If said clause is a valid clause, Clark in executing the lease placed a restriction upon his power to alienate any part of his estate in the land covered by the lease, with a right on the part of the subsequent grantee of such fractional interest to participate in the royalty, except in accordance with the said lease provision itself. * * *."

The court sustained the validity of the provision of the lease and further said:

"In the instant case the lessor-owner of the entire 160 acres executed the lease on it as an entirety. That he had the right to place therein any provision which he deemed either to his advantage or to the advantage of a subsequent purchaser of a fractional interest in the land or the mineral estate therein seems clear as an incident to his ownership. He had the right to limit his sale thereof or manner of the use thereof as to its entirety or any acreage within the whole, or any estate arising from any part thereof. What he did in fact was in the nature of a covenant which burdened his remainder to the extent that one purchasing subsequent to said lease contract, and subject to it, acquired an interest in the royalty on the whole acreage, prorated as the fraction thereof purchased bore to the entire tract. * * *."

It is true that in the Schonwald case the grantee, rather than the grantor, undertook to reform the mineral deed, but we think the principles laid down in that case apply with equal force both to the grantor and the grantee. The Schonwald case was followed by the Supreme Court of Oklahoma in Eason v. Rosamond, 173 Okl. 10. 46 P.2d 471.

We have no doubt that the effect of the deed itself was to convey to the defendants one-half of the oil, gas and other minerals in and under the 20-acre tract and reserve to the plaintiffs the

remaining one-half thereof and the oil, gas and other minerals under the 40-acre tract, but both the grantors and the grantees were bound by the provisions of the oil and gas lease. They could not convert that single lease into two leases or change the royalty provisions. The grantee's ownership of one-half of the oil and gas under the 20-acre tract gave it the right to receive under the terms of the lease one-sixth of the oil and gas royalties from the entire production of the 60-acre tract and the plaintiffs' ownership of one-half of the oil, gas and other minerals under the 20-acre tract and all of the oil, gas and other minerals under the 40-acre tract gave them the right to receive five-sixths of the royalties from all of the oil and gas produced from the 60-acre tract. It is not a question of the ownership of the oil, gas and other minerals. It is a question of how owners in severalty under the terms and provisions of the oil and gas lease shall participate in the royalties.

Of course, as to any oil or gas that may be produced from the premises after the expiration of the Magnolia lease, the several ownership will determine the rights of the parties.

We are of the opinion that a judgment should be rendered in accordance with the views herein expressed, to the effect that defendants acquired a several interest in one-half of the oil, gas and other minerals in and under the 20-acre tract and that the plaintiffs retained a several interest in the other one-half of the oil, gas and other minerals in and under the 20-acre tract and all of the oil, gas and other minerals in and under the 40-acre tract; that the estate granted by the mineral deed was limited by and subject to the terms and provisions of the oil and gas lease, and that such lease fixes their rights to participate in, and their proportionate shares of all of the royalties from the production from the entire 60-acre tract.

A judgment to that effect could not in any wise affect the interests of either Magnolia or Cohen or leave the controversy in such a condition that its final determination is inconsistent with equity or good conscience.

Reversed and remanded, with instructions to enter a judgment in accordance with the views herein expressed.