Earl CATES and Arrow Realty Company,
Appellants (Defendants),

Gunars Hvastkovs, (Defendant),

v.

Charles E. DANIELS and Belva S.
Daniels, Appellees (Plaintiffs).

Charles E. DANIELS and Belva S.
Daniels, Appellants (Plaintiffs),

v.

Earl CATES and Arrow Realty Company,
Appellees (Defendants),

Gunars Hvastkovs, (Defendant).

Nos. 5381, 5382.

Supreme Court of Wyoming.

May 22, 1981.

Harry E. Leimback, Casper, for appellants in Case No. 5381 and for appellees in Case No. 5382.

Richard H. Peek, Casper, for appellants in Case No. 5382 and for appellees in Case No. 5381.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and SAWYER, District Judge.

SAWYER, District Judge.

This action was brought by Charles E. Daniels and Belva S. Daniels, plaintiffs, the appellees in Case No. 5381 and the appellants in Case No. 5382, against Earl Cates, Arrow Realty Company and Gunars Hvastkovs, defendants, to recover from the defendants the equity in the sale of their residence, described as Lot 58 in the Sunset Addition to the City of Casper, Natrona County (hereinafter referred to as Sunset residence). Defendants filed an answer and counterclaim alleging a purchase agreement executed by plaintiff Charles E. Daniels for the purchase of Lot 30 in the Sandy Lake Estates Subdivision (hereinafter referred to as Lot 30) and alleging that the plaintiffs' equity in the Sunset residence was delivered to defendants for one Bruce Eddy, and also sued plaintiff Charles E. Daniels for the recovery of monies due from Charles E. Daniels to defendant Earl Cates on a promissory note.

The district court awarded the Danielses judgment as tenants by the entirety against Earl Cates and Arrow Realty Company, appellants in Case No. 5381, in the amount of the equity withheld from the sale of their Sunset residence, together with the interest from the date of closing and suit costs, from which judgment defendants Earl Cates and Arrow Realty Company appealed. Plaintiffs appealed from the award in Case No. 5382 contending the trial court committed an error by failing to award them treble damages. The trial court found in favor of defendant Gunars Hvastkovs, and no appeal was taken from this portion of the trial court's decision. The district court awarded defendant Earl Cates judgment against plaintiff Charles E. Daniels in the amount owed on the promissory note, together with interest, and no appeal was taken by Charles E. Daniels as to this portion of the judgment.

We affirm the decision of the district court in Case No. 5381 and Case No. 5382.

Appellants Earl Cates and Arrow Realty Company set forth the issues here presented as follows:

1. Did the court err in striking the defendants' jury demand?

2. Was Dr. Bruce Eddy an indispensable party and a necessary real party in interest?

3. Did the proceeds from the sale of the Danielses' property retain its identity as marital property?

4. Did Belva Daniels, prior to the closing of May 26, 1978, expressly or by implication, ratify the Daniels-Eddy contract and the distribution of the equity proceeds therefrom?

5. Did the plaintiffs, by the conduct of their affairs, create an implied agency or an agency created by operation of law?

6. Did the court commit an error at law by refusing to award the Danielses treble damages as provided by § 33–28–114(b), W.S.1977?

The Danielses' complaint was filed on December 15, 1978, in the District Court, Natrona County, seeking the recovery of their equity in the sale of their Sunset residence, which was located in Casper. In the original complaint, the Danielses sued on the basis of breach of contract, fraud, misrepresentation, breach of fiduciary duty, negligence, gross negligence, statutory damages under § 33–28–114(b), W.S.1977, punitive

damages, and that the Danielses' equity was marital property, and they should have judgment as husband and wife.

On January 18, 1979, defendants filed an answer setting forth affirmative defenses and alleging the purchase agreement executed by plaintiff Charles E. Daniels for the purchase of Lot 30 and alleging that the Danielses' equity in their Sunset residence was delivered to defendants for one Bruce Eddy. Appellants in Case No. 5381 also filed a counterclaim against the Danielses under the purchase agreement for Lot 30 under which defendants sought a seven percent selling commission and a seven percent selling commission for the Sunset property, sued the Danielses for mortgage payments due under the Lot 30 agreement, sued the Danielses for damages to the Lot 30 residence, sued Charles E. Daniels for a sum remaining to be paid on the promissory note, and sued the Danielses for certain costs of sale of the Sunset residence.

On January 31, 1979, the Danielses filed a response to defendants' counterclaim and alleged affirmative defenses.

At the pretrial conference, the Danielses requested leave to file an amended complaint, and the court by its pretrial order of August 31, 1979, permitted the amendment, and the amended complaint was filed on September 17, 1979.

Defendants filed their answer to the amended complaint on October 9, 1979, setting forth affirmative defenses, together with a counterclaim for the recovery of monies due from Charles E. Daniels to Earl Cates on a promissory note, and at the same time filed a demand for trial by jury.

On November 16, 1979, plaintiffs filed a motion for summary judgment which was subsequently denied.

On March 11, 1980, the Danielses filed a motion to strike jury demand, which motion was heard by the district court on March 18, 1980, and on April 16, 1980, the district court filed an order striking defendants' jury demand and setting the case for trial on April 21, 1980.

## STRIKING THE DEFENDANTS' DEMAND FOR JURY TRIAL

This appeal has as one of its primary issues a question concerning a party's right to jury trial under Rule 38, W.R.C.P., where demand for jury is untimely made. Rule 38, W.R.C.P., requires that a demand for jury trial be made in writing at any time after commencement of the action and not later than ten days after service of the last pleading directed to such issues. Rule 38(d) declares:

"(d) *Waiver.*—The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. * * * "

Defendants contend that when the Danielses amended their complaint, the new matter alleged presented sufficient exposure so as to justify the demand for trial by jury. An examination of the original pleadings, namely, the complaint, answer, affirmative defenses, counterclaim, and response to counterclaim, reveals that they set forth all of the causes of action that were raised in the amended complaint, answer, affirmative defenses, offset and counterclaim. Nothing new which would extend the period for making demand for jury appeared in the case after the filing of the original answer and counterclaim by the defendants. Defendants' demand for jury trial was made approximately ten months after service of defendants' answer and counterclaim. This demand was clearly untimely even though the trial judge granted at the pretrial conference plaintiffs Danielses' motion to amend their pleadings, as the amended complaint and the answer, affirmative defenses, offset, and counterclaim subsequently filed did not present fundamental factual questions or new issues not fairly raised by the original pleadings.

This court in *Scherling v. Kilgore,* Wyo., 599 P.2d 1352, 1356, reh. denied (1979), states:

"The general rules with regard to jury demands are:

" ' * * *

" 'If the only pleadings in the case are the complaint and the answer, the demand for jury trial must be served not later than ten days after service of the answer. It is proper to serve the demand prior to answer. Indeed plaintiff will frequently demand jury trial with the filing of his complaint. * * *

* * * * * *

" 'The same principle applies to amended and supplemental pleadings. Demand may be made within ten days after service of the amended or supplemental pleading for new issues raised by that pleading but the amendment does not revive a right, previously waived, to demand jury trial on the issues already framed by the original pleadings. Nor does the late demand create a right to jury trial on issues raised by the amended or supplemental pleadings if those issues were fairly raised by the original pleadings.' "

In the present case before the court all issues contained in the amended or supplemental pleadings were originally raised by the first pleadings filed by the parties, and, therefore, the right to demand a jury trial was waived when it was not timely made.

## WAS BRUCE EDDY AN INDISPENSABLE PARTY AND A NECESSARY REAL PARTY IN INTEREST?

■ We find that Bruce Eddy was a proper party but was not an indispensable party and was not a necessary real party in interest. No effort was made by the defendants to bring Bruce Eddy into the litigation, and at no time did defendants file a motion to dismiss because Bruce Eddy had not been joined which they should have done if he was a necessary party. See 67A C.J.S. Parties § 151, pp. 985–987. This court in *American Beryllium & Oil Corporation v. Chase*, Wyo., 425 P.2d 66, 68–69 (1967), stated:

"There is no hard and fast rule by which it can be determined whether or not a party having an interest in a proceeding is an indispensable party.

"Judge Kerr in *Amerada Petroleum Corporation v. Rio Oil Co.*, D.C.Wyo., 225 F.Supp. 907, 910, stated the classic general rule as follows:

" 'An indispensable party has been defined as one without whose presence before the court a final decree could not be made without either affecting his interest or leaving the controversy in such a condition that its final determination might be wholly inconsistent with equity and good conscience. * * * Whether or not a person is an indispensable party cannot be determined by a prescribed formula because the facts peculiar to each case are determinative of that question. * * *'

"The rule is well supported by authority. "We discussed the rationale of the rule in the early case of *Field v. Leiter*, 16 Wyo. 1, 90 P. 378, 125 Am.St.Rep. 977, rehearing denied 92 P. 622. The adoption of Rule 19(a), W.R.C.P., did not change this early concept governing proceedings in equity. *Turner v. Brookshear*, 10 Cir., 271 F.2d 761, 764. A concise statement of the specific tests under the rule is found in *Photometric Products Corporation v. Radtke*, D.C.N.Y., 17 F.R.D. 103, 109, as follows:

" ' "After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?

" ' " * * * [I]f any one of the four questions is answered in the negative, then the absent party is indispensable." ' "

All questions in the case before the court have been answered by the district court in the affirmative.

The district court in its judgment in ¶ 15 of its findings found that the plaintiff, Belva S. Daniels, neither entered into the purchase of Lot 30 nor ratified, adopted, became estopped, or constituted plaintiff Charles E. Daniels as her agent, or otherwise acted so as to become liable on that contract; and in ¶ 16 found that the transaction of selling the plaintiffs' Sunset residence and the transaction of purchasing Lot 30 are separate transactions and are not interrelated or independent; and, further, in ¶ 19 found no basis for holding any of the funds for Bruce Eddy under the contract executed by plaintiff Charles E. Daniels for the purchase of Lot 30 and consequently found that Bruce Eddy was not an indispensable party. This court is not able to conclude, after reviewing all the evidence, that we are left with a definite and firm impression that the district court's findings are mistaken.

The disposition of this case depends upon resolution of conflicts in the evidence, and this court must favor the evidence of the prevailing party and presume specific findings of fact to be correct unless clearly erroneous or against the great weight of evidence. *Mountain Fuel Supply Company v. Central Engineering & Equipment Company*, Wyo., 611 P.2d 863 (1980).

## DID THE PROCEEDS FROM THE SALE OF THE DANIELSES' PROPERTY RETAIN ITS IDENTITY AS MARITAL PROPERTY?

The trial court found that the Danielses held the Sunset property as tenants by the entirety and the evidence clearly supports this finding. Appellants contend that the marital property changed at the time of the closing of the sale, because appellee Belva S. Daniels knew her husband had signed an agreement to purchase Lot 30 at the time she signed the closing papers for the sale of the Sunset residence. Belva S. Daniels did not execute any instrument involving the purchase of said Lot 30, and there is evidence to support the trial court's finding that at the closing of the Sunset residence sale the Danielses refused to complete clos-ing until they were paid their equity in full and only did complete the closing when appellants' agent, Gunars Hvastkovs, made representations to them that the funds would be transferred to them.

■ This court in *Ward Terry and Company v. Hensen*, 75 Wyo. 444, 297 P.2d 213, 219–220 (1956), has held that the proceeds, or equity from the sale of marital property, remains entireties property when it said:

"* * * In the absence of an agreement to the contrary the income, rents and profits of an estate by the entirety are an integral, indivisible part thereof and frequently are the most important part. The estate itself, title and fee thereof, is indivisible between husband and wife and cannot be alienated or in any way disposed of unless they agree to the contrary. That indivisibility must logically extend to every part of the estate including the rents, income and profits thereof and hence neither spouse would alone be able to divest the other thereof voluntarily or involuntarily against the wishes of the other during the life of both. * * * "

## DID APPELLEE BELVA S. DANIELS RATIFY THE PURCHASE AGREEMENT FOR LOT 30?

As previously stated, the trial court made a specific finding that the agreement for the sale of the Sunset residence signed by the Danielses was separate and distinct from the agreement for the purchase of Lot 30 which was signed only by plaintiff Charles E. Daniels. Appellants assert that Belva S. Daniels expressly or impliedly ratified the acts of her husband, Charles E. Daniels, and should be bound by said contract for the purchase of Lot 30.

Section 16–1–101, W.S.1977, provides as follows:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

* * * * * *

"(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year;"

This court in *Wallis v. Bosler*, 70 Wyo. 129, 246 P.2d 771, 778 (1952), in referring to the above statute stated:

"The Wyoming Statute of Frauds, insofar as we have been able to find is the only statute covering the various transactions mentioned, which requires in all cases that the agreement must be signed by the party to be charged. A strict construction thereof might mean that in no case could authority be given in writing to another. We are of the opinion that such a construction would be too strict. As we view it, the statute means that 'the party to be charged' *must sign*. We think that this requirement would be satisfied if the party to be charged were to authorize another in writing to sign. The giving to another parol authority, or an oral ratification, would not be sufficient." (Emphasis in original.)

■ Plaintiff Belva S. Daniels did not execute the contract for the purchase of Lot 30 nor did she give her husband written authority to execute said purchase agreement. The trial court correctly found that Belva S. Daniels did not ratify or adopt the purchase agreement for the purchase of Lot 30.

## DID APPELLEE BELVA S. DANIELS CONSTITUTE HER HUSBAND AS HER AGENT FOR THE PURCHASE OF LOT 30?

■ The trial court in ¶ 15 of the judgment found that Belva S. Daniels did not constitute her husband, Charles E. Daniels, as her agent to purchase Lot 30. She was not a party to the contract to purchase Lot 30 and did not give her husband written authority to sign the contract for her. In *Wallis v. Bosler*, supra, this court made it clear that for a person to be liable on a contract, he must be a party to the contract or must have given his agent written authority to sign the agreement on his behalf.

## DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY REFUSING TO AWARD THE DANIELSES TREBLE DAMAGES AS PROVIDED BY § 33–28–114(b), W.S.1977?

The Danielses, plaintiffs and appellants in Case No. 5382, contend that since the trial court found defendants were acting as real estate agents for the Danielses in the sale of their Sunset residence and determined that the defendants had failed to remit the proceeds from the sale of the property held by the Danielses as tenants by the entirety, the court committed an error at law by failing to award them treble damages. Section 33–28–114, W.S.1977, provides:

"(a) Any person acting as a broker or salesman without first obtaining a license shall be guilty of a misdemeanor and upon conviction thereof shall be punishable by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment in the county jail for a term not to exceed six (6) months. Upon conviction of a subsequent violation the person shall be punishable by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment in the county jail for a term not to exceed one (1) year or both; and if a corporation is convicted it shall be punished by a fine of not more than five thousand dollars ($5,000.00).

"(b) In case any person shall have received any money or the equivalent thereof as a fee, commission, compensation or profit by or in consequence of a violation of any provision of this act [§§ 33–28–101 to 33–28–117], he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the court, which penalty may be recovered in any court of competent jurisdiction by any person aggrieved."

■ Subsection (a) provides a criminal penalty for the violation of the act, and subsection (b) authorizes a penalty of not more than three times the sum so received, as may be determined by the court. The

award of such punitive damages is solely in the discretion of the trial court. The trial court did not find that the plaintiffs were entitled to treble or punitive damages, and we have found nothing in the record justifying a contrary conclusion. In *Mader v. Stephenson*, Wyo., 552 P.2d 1114, 1115 (1976), this court stated:

" * * * Phrased in another manner, which would dictate the same result, an award of such damages is optional or solely in the discretion of the fact finder, *Sunset Acres Motel, Inc. v. Jacobs*, Mo., 336 S.W.2d 473, 483; *Bridges v. Alaska Housing Authority*, Alaska, 375 P.2d 696, 702–703, and authorities noted; *Matheny v. Petersen*, 276 Ala. 478, 163 So.2d 635, 638; *Triton Insurance Underwriters, Inc., v. Committee on Chiropractic Welfare*, 232 Cal.App.2d 829, 43 Cal.Rptr. 504, 505–506, and cases cited. It may be noted that some of the above citations join both these rules or statements in arriving at this result. Therefore, when the trial court as the fact finder does not award punitive damages, an appellate court cannot change such finding or remand it for determination."

Whether or not treble damages or punitive damages should be allowed is within the discretion of the trial court. Only if there is a clear abuse of discretion will we reverse the trial court's determination. We find no abuse of discretion in the judge's decision not to award treble damages.

Case No. 5381 and Case No. 5382 are affirmed.